TRUSTEES OF COLUMBIA UNIVERSITY, Plaintiff, v MITCHELL/GIUR-GOLA ASSOCIATES et al., Defendants, SKILLING, HELLE, CHRISTIANSEN, ROBERTSON, P. C., Appellant, and BERGEN COUNTY CUT STONE CO., INC., et al., Defendants and Third-Party Plaintiffs-Appellants. EXPOSAIC INDUSTRIES, INC., Third-Party Defendant-Respondent.

First Department, July 25, 1985

APPEARANCES OF COUNSEL

*Lester Esterman* of counsel (*Hart & Hume,* attorneys), for appellant.

*Lewis I. Wolf* of counsel (*Smith, Mazure, Director & Wilkins,* attorneys), for defendants and third-party plaintiffs-appellants.

*Charles V. Choyce, Jr.,* of counsel (*Sutton Keany, Aileen Meyer* and *Herman L. Fussell* with him on the brief; *Winthrop, Stimson, Putnam & Roberts* and *Stokes, Shapiro, Fussell & Genberg,* attorneys), for third-party defendant-respondent.

## OPINION OF THE COURT

Ellerin, J.

This action arises out of the construction at Columbia University of the Sherman Fairchild Center for Life Sciences, which was completed in 1977, and involves claimed defects in the exterior "curtain wall" of the building and the tiles attached to that wall. In the summer of 1980, after a tile fell from the wall, Columbia took emergency safety measures and ordered an inspection of the building which revealed not only that the tiles were not properly attached to the wall, but that the entire wall was in imminent danger of collapse. Columbia thereafter engaged consultants and had extensive repairs made in order to put the building into a safe condition. It commenced the instant action in May 1983 seeking to recover damages for the expenditures incurred in the sum of $600,000 against, *inter alia,* the structural engineering consultants, Skilling, Helle, Christiansen, Robertson, P. C. (Skilling); the installers of the curtain wall and tiles, Bergen County Cut Stone Co., Inc. (Bergen), and Consolidated Stone Cutters, Inc. (Consolidated); and the supplier of the curtain wall and tiles, Exposaic Industries, Inc. (Exposaic).

Bergen had entered into a contract with the owner Columbia (through its agent-construction manager, Tishman Co.) to perform a portion of the construction work. It undertook to furnish and install all precast concrete, limestone and granite for the center including the subject "curtain" wall. That contract contained a guarantee by Bergen of materials and workmanship for two years from the date of completion and a provision that it would repair or replace any defective work found during that period. Consolidated was thereafter engaged by Bergen to actually perform the installation of the curtain wall and tiles, and Bergen contracted with Exposaic, in 1975, for the fabrication and supplying of the precast concrete panels and facing tiles for

the wall. The Bergen-Exposaic contract included a guarantee by Exposaic of all materials and workmanship for a period of one year, and a disclaimer of responsibility for repair or replacement of goods accepted by Bergen County. Exposaic last delivered materials pursuant to this contract in November 1976.

In their answers, various cross claims were asserted by the several defendants including claims by each of the defendants-appellants for recovery over against Exposaic on the basis of both indemnity and contribution.

After joinder of issue, Exposaic moved for summary judgment dismissing so much of plaintiff's complaint as alleged causes of action against it based on breach of contract, negligence and strict products liability theories. Special Term granted Exposaic's motion in its entirety finding that the breach of contract cause was time barred and that the remaining negligence and strict liability causes were not actionable under the authority of *Schiavone Constr. Co. v Elgood Mayo Corp.* (56 NY2d 667, *revg* on dissenting opn of Silverman, J., 81 AD2d 221, 227-234), because they were seeking a recovery against a remote manufacturer, not in privity with plaintiff, for what the court concluded was economic loss resulting from the product's failure to function properly, rather than physical damage to persons or property.

Defendants Bergen and Consolidated thereafter served a joint third-party summons and complaint against Exposaic (in place of their prior cross claims) once again alleging causes of action for indemnity and contribution. After answering the third-party pleading, Exposaic brought the instant motion for summary judgment, this time seeking dismissal of the third-party complaint and the outstanding cross claims of the structural engineering consultant, Skilling, and the architect, Mitchell/Giurgola Associates.

Special Term (Sherman, J.), finding that the various defendants had no right to either indemnity or contribution against Exposaic, granted its motion for summary judgment dismissing the third-party complaint and the cross claims. All defendants, except the architect Mitchell/Giurgola have appealed.

■ We agree that the claims seeking indemnity were properly dismissed. Indemnity involves an attempt to shift the entire loss from one who is compelled to pay for a loss, without regard to his own fault, to another party who should more properly bear responsibility for that loss because it was the actual wrongdoer. The right to indemnification may be created by express contract, or may be implied by law to prevent an unjust enrichment or an

unfair result. (*County of Westchester v Welton Becket Assoc.,* 102 AD2d 34, 46-48.)

In this case neither the joint third-party complaint of Bergen and Consolidated, nor the cross claim of Skilling, alleges a right of indemnification by way of an express contract of indemnity with Exposaic. Indeed, Bergen is the only one of the defendants with whom Exposaic had any contractual relationship and that agreement contained a provision wherein Exposaic expressly disclaimed any responsibility for Bergen's liability to others.

The Bergen-Consolidated claim for indemnity is couched in terms of Exposaic's active/primary negligence and defendants' passive/secondary negligence while Skilling seeks such relief based upon allegations of the "culpable conduct" of others, including Exposaic, without any culpable conduct on Skilling's part. These characterizations are reflective of the criteria upon which common-law indemnity or indemnity implied by law have been predicated in the past.

Historically, common-law indemnity had its roots in principles of equity and fairness recognizing that one who was compelled to pay for the wrong of another should be allowed to recover from the actual wrongdoer the damages paid to the injured party. (*McDermott v City of New York,* 50 NY2d 211; *Oceanic Steam Nav. Co. v Compania Transatlantica Espanola,* 134 NY 461.) In the classic indemnification case, the one entitled to indemnity from another had committed no wrong, but by virtue of some relationship with the tort-feasor (such as master and servant) or some obligation imposed by law (such as the nondelegable duty imposed on a landlord under the Multiple Dwelling Law) was nevertheless held liable to the injured party. Under such circumstances, a contract was implied by law for full reimbursement or indemnification of the one held vicariously liable by the actual tort-feasor.

In its early stages, common-law or implied indemnity was essentially confined to the classic vicarious liability patterns. Its subsequent development, however, was colored by the need to ameliorate the harsh effects of the then controlling inflexible rules against contribution or apportionment among joint tort-feasors and this objective led the law of indemnity into the oftimes arcane spheres of active and passive negligence, acts of omission and commission, primary and secondary wrongdoers and ultimately into somewhat esoteric evaluations of relative degrees of fault or the "factual disparity between the delinquency" of the several tort-feasors, all in the quest to shift total responsibility for the wrong to the one whose negligence or fault

was the greater. These often strained efforts to mold implied indemnity into a mechanism for adjusting the equities among joint tort-feasors blurred its traditional focus and engendered considerable confusion. Moreover, no matter how far the doctrine was stretched, its "all or nothing" consequence rendered it ill-suited to accurately allocate responsibility among joint wrongdoers. That problem, however, was resolved by the decision in *Dole v Dow Chem. Co.* (30 NY2d 143), and the statutory changes that followed in its wake, which dramatically altered the law of this State by adopting the realistic and equitable approach of permitting contribution among joint tort-feasors proportionate to their respective degrees of responsibility for causing a particular injury or harm. While the changes wrought by the *Dole* decision have rendered archaic the artificial qualitative characterizations of fault, such as those asserted in appellants' pleadings, which were previously resorted to as a basis for utilizing implied indemnity to provide some relief for the otherwise unredressed inequities among joint tort-feasors, the *Dole* decision has left intact the basic principles of implied indemnity which permit one who is held vicariously liable solely on account of the negligence of another to shift the entire burden of the loss to the actual wrongdoer. (*See generally,* the excellent discussions in *D'Ambrosio v City of New York,* 55 NY2d 454; *Garrett v Holiday Inns,* 58 NY2d 253; *Riviello v Waldron,* 47 NY2d 297; *Rogers v Dorchester Assoc.,* 32 NY2d 553; *County of Westchester v Welton Becket Assoc., supra; Mauro v McCrindle,* 70 AD2d 77.) Since the predicate of common-law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine. (*Rock v Reed-Prentice Div.,* 39 NY2d 34.) In the instant case, defendants-appellants, the structural engineer and the installers of the wall, are each being charged with liability for negligence in failing to exercise due care in the performance of their own respective obligations directed toward construction of a workmanlike curtain wall, and not merely vicariously for defects in the materials supplied by Exposaic. Skilling, the structural engineer, is charged with negligence in the preparing or planning of the design and/or engineering work, while Bergen and Consolidated are charged with negligence in failing to properly perform in adherence to the plans and specifications with respect to the actual installation of the "curtain wall" and tiles and in failing to exercise due care to discover any alleged defects in the course of the performance of their work. Thus, liability against any of these defendants would be based upon

such defendant's own participation in the acts giving rise to the loss, that is, as an actual wrongdoer, and, alternatively, if a defendant did perform its duties properly by exercising due care and skill in the performance of its work thereby fulfilling its obligations to plaintiff, such defendant would be free from liability irrespective of whether Exposaic did, in fact, supply faulty materials. In either event, these defendants would be precluded from recovery against Exposaic on the basis of common-law indemnity. (*See, Rock v Reed-Prentice Div., supra; County of Westchester v Welton Becket Assoc., supra.*)

A different situation prevails with regard to the claims for contribution. The right to contribution and apportionment of liability among alleged multiple wrongdoers arises when they each owe a duty to plaintiff or to each other and by breaching their respective duties they contribute to plaintiff's ultimate injuries. This is so regardless of whether the parties are joint tort-feasors, or whether they are liable under different theories, so long as their wrongdoing contributes to the damage or injury involved. (*Garrett v Holiday Inns, supra; Schauer v Joyce,* 54 NY2d 1.) Thus, in order to sustain the claims against Exposaic for contribution, it would be necessary to find that Exposaic owed a duty either to plaintiff or to the various defendants.

Since Exposaic never had any contractual or other direct relationship with either Skilling or Consolidated, it cannot be said that Exposaic owed any duty to either of them that could serve as an independent basis for contribution. (*Cf. County of Westchester v Welton Becket Assoc., supra.*) While defendant Bergen was originally in privity of contract with Exposaic, it would appear that Special Term correctly found that there was no breach of any contractual right which might serve as the basis for contribution since there was a failure by Bergen, after accepting delivery, to report any defects within the year guarantee period, pursuant to the terms of the contract.

The only remaining issue, therefore, is whether Exposaic, contrary to the holding of Special Term, did, in fact, owe a duty to the plaintiff, Columbia, violation of which would render Exposaic a joint tort-feasor subject to the rules of contribution.

Special Term, while recognizing that plaintiffs may well have suffered not only a pecuniary loss but also property damage to its building, was constrained, by the law of the case, to dismiss the defendants' claims for contribution by reason of the prior ruling by a Justice of coordinate jurisdiction holding that plaintiff's claim for "economic loss" was not actionable against Exposaic. Finding that Exposaic owed the codefendants no greater

duty than it owed to the plaintiff, Special Term held that absent such duty there was no basis for contribution.

Since we are not similarly bound by the law of the case doctrine (*Martin v City of Cohoes,* 37 NY2d 162; *First Commercial Bank v Gotham Originals,* 101 AD2d 790) we find, contrary to the ruling by Special Term on Exposaic's prior summary judgment motion for dismissal of the complaint, that plaintiff's claim against Exposaic does not fall within the ambit of the economic loss doctrine of *Schiavone Constr. Co. v Elgood Mayo Corp. (supra),* and hold that plaintiff's claim against Exposaic set forth a viable cause of action for property damage to its building arising from the allegedly defective materials supplied by Exposaic, which materials were to be installed as part of a building wall located on a crowded university campus and thus constituted an unduly dangerous product for which damages under a strict liability theory may be maintained.

The situation here, involving a wall in a college setting damaged to the point of imminent collapse by reason of the defective materials supplied by the manufacturer, is far different from the situation in *Schiavone (supra),* which merely involved a piece of equipment that did not function properly for which the owner incurred costs of repair. The instant case is far more akin to *Dudley Constr. v Drott Mfg. Co.* (66 AD2d 368 [4th Dept]), favorably cited by Justice Silverman in his opinion in *Schiavone (supra).* In *Dudley* (at p 374), the court held that the damages which resulted to a crane when it collapsed due to defects in certain of its bolts constituted "physical injuries to the crane incurred in an accident caused by the defective parts" and were compensable under the doctrine of strict products liability. The extensive injuries to the instant wall were similarly incurred in an accident caused by defective parts — i.e., the precast concrete panels and tiles fabricated by Exposaic. That a wall rendered defective and in imminent danger of collapse by improperly fabricated materials constitutes the type of dangerous product for which the manufacturer owes a duty to the ultimate user under the doctrine of strict products liability bespeaks itself. (*Dudley Constr. v Drott Mfg. Co., supra.*)

Having found that Exposaic, as the fabricator of the panels and tiles, owed a duty to plaintiff under strict products liability law, it would occupy the status of a joint tort-feasor vis-à-vis the defendants-appellants and would be subject to contribution to the extent of its proportionate responsibility for the damages suffered by plaintiff. That plaintiff itself cannot recover directly against Exposaic does not alter this result since it is the exis-

tence of the *duty* owed to plaintiff that is critical in activating Exposaic's liability for contribution and not plaintiff's ability to recover. (*Klinger v Dudley,* 41 NY2d 362; *Schauer v Joyce,* 54 NY2d 1.)

Accordingly, the cross claims and third-party claims seeking contribution against Exposaic should be reinstated and the order, Supreme Court, New York County (Burton S. Sherman, J.), entered on October 23, 1984, should be modified, on the law, to the extent only of denying defendant Exposaic Industries, Inc.'s motion for summary judgment dismissing the cross claims and third-party claims of defendants-appellants seeking contribution, and otherwise affirmed, without costs and without disbursements.

MURPHY, P. J., SULLIVAN, CARRO and LYNCH, JJ., concur.

Order, Supreme Court, New York County, entered on October 23, 1984, unanimously modified, on the law, to the extent only of denying defendant-respondent's motion for summary judgment dismissing the cross claims and third-party claims of defendants-appellants seeking contribution, and otherwise affirmed, without costs and without disbursements.