Titone, J.
(dissenting in part and concurring in part). Faced with the question of whether New York’s strict products liability doctrine permits recovery of economic loss in these circumstances, the majority has postponed decision on the point, holding instead that regardless of the analysis applied the defective product in question here was, as a matter of law, simply not within the category of those that would support a products liability claim. Since this conclusion ignores an affirmed and well-supported jury finding that the product was dangerous, I must take issue with that aspect of the majority’s *300 analysis. Moreover, I disagree with the majority’s ultimate disposition of defendant Masonite’s appeal, since I conclude that a recovery in strict products liability ought to be permitted where, as here, the "economic injuries” for which recovery was sought consisted principally of the expenses that the plaintiff, a remote purchaser, incurred in replacing the defective product specifically to eliminate the proven risk of personal injury that the defective product posed. Such a narrow rule is, in my view, consistent with the policies underlying both tort law in general and the doctrine of strict products liability in particular. Most importantly, it represents the fairest and most sensible means of balancing those policies against the policies underlying the UCC breach of warranty remedies. Accordingly, I dissent.
Initially, there can be little doubt that the jury’s verdict on plaintiffs strict products liability claim represents a finding that the tiles manufactured by Masonite’s predecessor were dangerously defective. The jury was charged that "[a] product is defective if it is not reasonably safe, that is, if the product is likely to be harmful to people so that a reasonable person who had knowledge of its potential for producing injury would conclude that it should not be marketed in that condition.” When asked in a special interrogatory whether the tiles were "defective,” the jury answered affirmatively, thus signaling its finding that the tiles were hazardous. Since the Appellate Division did not disturb that finding and, in fact, indicated that it too would have placed the tiles within the category of products that are "unduly dangerous” (see, 160 AD2d 189, 190), the finding cannot be disturbed unless it is, as a matter of law, not supported by the evidence (Cohen v Hallmark Cards, 45 NY2d 493, 499; see, Siegel, NY Prac § 529, at 827 [2d ed]). Certainly, that conclusion cannot be drawn here.
One representative of plaintiff, an architect by training, testified that he considered the emerging problem with the Masonite tiles to be a "dangerous and hazardous situation.” An agreement between plaintiff, HRH (the general contractor) and Circle (the subcontractor) referred to the tile’s condition in some areas as "hazardous.” Most significantly of all, the trial evidence indicated that injuries such as a compressed and broken vertebra, an injured arm and a bruised leg and foot had been sustained as a result of accidents in which apartment occupants had tripped over defective tiles. While plaintiff was not called upon to pay personal injury damages as a result of these accidents, that fortuity does not in any *301 way detract from the obvious inference that the tiles were dangerous.
The majority brushes aside the finding of dangerousness on the ground that the "intermediate approach” discussed in its opinion requires a legal rather than a factual analysis based on a consideration of three factors: the nature of the defect, the type of risk and the manner in which the plaintiffs injury occurred (majority opn, at 294, n 2; see, e.g., Pennsylvania Glass Sand Corp. v Caterpillar Tractor Co., 652 F2d 1165). However, the dangerousness finding is highly relevant in this three-factor analysis. Indeed, courts which have invoked that analysis have most often "reach[ed] different results depending on the hazardous or non-hazardous nature of the defective product at issue” (Salt Riv. Project Agric. Improvement & Power Dist. v Westinghouse Elec. Corp., 143 Ariz 368, 377, 694 P2d 198, 207 [analyzing and applying prior "intermediate approach” decisions]; accord, East River S. S. Corp. v Transamerica Delaval, 476 US 858, 870 ["(t)he intermediate positions * * * essentially turn on the degree of risk”]). Thus, under the "intermediate approach,” where the product defect "is qualitative in nature and relates to a consumer’s expectations” the claim will be deemed to lie in contract not tort law; but the converse will be true where " 'a product is sold in a defective condition that is unreasonably dangerous to the user’ ” (Board of Educ. v A, C & S, Inc., 131 Ill 2d 428, 440, 546 NE2d 580, 585, quoting Moorman Mfg. Co. v National Tank Co., 91 Ill 2d 69, 88, 435 NE2d 443, 448).
In this case, the majority has concluded that the product defect falls within the former category because "the bargained-for consideration has failed to meet the expectations of the purchaser” (majority opn, at 294). However, the analysis plainly cannot stop at that point since, in addition to "failing to meet the [purchaser’s] expectations,” the tiles failed in a way that rendered them hazardous to life and limb. Thus, this is more than a case of mere “disappointed economic expectations.” Rather it is one involving the risk of actual bodily harm, a subject that the "intermediate approach” would consider well within the policies and reach of tort law (see, Pennsylvania Glass Sand Corp. v Caterpillar Tractor Co., 652 F2d 1165, 1174, supra).
The majority’s observations that a wood tile with less than 100% adhesive coverage "may be adequate for a number of uses, even if not the bargained-for use in plaintiffs apartment *302 complex” (majority opn, at 294) clearly does not provide a persuasive ground for denying recovery under the "intermediate approach.” First, the majority’s observation is highly speculative and, indeed, it is difficult to imagine what other use, apart from mere display, would be suitable for tiles that could not withstand ordinary residential use. Second, the theoretical alternative uses of these tiles, if any, are irrelevant, since the tiles were, in fact, dangerous when put to use in plaintiff’s apartments — the precise use for which they were designed and fabricated.
Similarly, the fact that the product failed through a process of deterioration rather than a "catastrophic accident” — a fact on which the majority relies almost entirely (see, majority opn, at 294)[1] is not decisive (see, Northern Power & Eng’g Corp. v Caterpillar Tractor Co., 623 P2d 324, 328 [Alaska] ["(t)here is nothing magical about the phrase 'sudden and calamitous’ ”]). As one authority has observed, the rationale for some courts’ emphasis on accidents of violence and collision with external objects "is that such situations present a greater safety risk.” (Pennsylvania Sand Glass Corp. v Caterpillar Tractor Co., supra, at 1170, n 14.) In this case, the safety risk is well documented and there is thus no need to consider the nature of the occurrence that led to the product harm to determine whether the product failure implicated human safety as well as contractual expectations. In these circumstances, "[t]o prevent recovery in tort merely because the physical harm did not occur suddenly would defeat the underlying purposes of strict products liability” (Board of Educ. v A, C & S, Inc., 131 Ill 2d, supra, at 449-450, 546 NE2d, supra, at 590 [applying "intermediate approach”]).
Having concluded that the so-called "intermediate approach” would permit tort liability under these facts, I turn now to the question the majority has declined to answer: whether that approach should be adopted in New York. I begin with the premise that under well-established tort principles strict liability recovery has not previously been limited to personal injury claims. Section 402 A of the Restatement (Second) of Torts states that strict products liability recovery *303 may be had where there has been injury to person or property. Although our Court has not explicitly adopted this aspect of the Restatement rule, other courts in this State have and there is no reason to believe that we would do otherwise if the question were squarely presented to us (see, e.g., Dudley Constr. v Drott Mfg. Co., 66 AD2d 368; see also, Schiavone Constr. Co. v Mayo Corp., 81 AD2d 221, 228-229 [Silverman, J., dissenting], revd on dissent 56 NY2d 667). Indeed, in a case decided shortly after MacPherson v Buick Motor Co. (217 NY 382), the paradigmatic strict products liability case, this Court anticipated section 402 A by holding that a manufacturer’s duty to remote purchasers includes protecting their property as well as their persons (Genesee County Patrons Fire Relief Assn. v Sonneborn Sons, 263 NY 463, 469, 473).
Adoption of the Restatement’s position on property damage, however, does not end the inquiry. As the majority notes, the Supreme Court’s 1985 decision in East River S. S. Corp. v Transamerica Delaval (476 US 858, supra), an admiralty case, raised important questions about the viability of the so-called "intermediate approach” in cases where the product defect caused injury only to the product itself (see generally, Annotation, Strict Products Liability: Recovery for Damage to Product Alone, 72 ALR4th 12). Focusing on the narrow question of whether and when recovery should be permitted for injury to the defective product itself, the Court reviewed the various approaches and distinctions that had been tried elsewhere to permit recovery and concluded that none were satisfactory. The Court specifically rejected the "intermediate approach” as "too indeterminate” and instead held that, regardless of the degree or type of risk posed by the defective product, claims involving injury to the product itself are best resolved by application of "[c]ontract law, and the law of warranty in particular, [which] is well suited to commercial controversies of th[is] sort” (476 US, supra, at 870, 872).
The broad East River holding has many persuasive elements, particularly its assurance of clarity and certainty.[2] Moreover, for most cases involving product harm leading to mere economic loss, the holding results in a sensible method of drawing the often elusive line between contract and tort law. *304 However, in circumstances such as those presented here, the East River holding does not serve that salutary purpose, and instead actually operates to undermine the important public policies underlying our tort law. It is my concern for those policies that leads me to take the analysis yet one step further here.
The factor that, for me, distinguishes this case from the garden-variety injury-to-product cases discussed in the majority opinion is the nature of the damages the plaintiff here seeks. Unlike East River (supra), Seely v White Motor Co. (63 Cal 2d 9, 403 P2d 145) and virtually every other case in the injury-to-product line (e.g., Trustees of Columbia Univ. v Mitchell/Giurgola Assocs., 109 AD2d 449; Schiavone Constr. Co. v Mayo Corp., supra; Dudley Constr. v Drott Mfg. Co., supra), the plaintiff in this case is seeking to recover the costs it incurred in removing and replacing the dangerously defective tiles before further accidents — and further injury — occurred.[3] In this situation, the policies that inform tort law suggest that a strict products liability recovery should be permitted.
The traditional concerns of contract law, and warranty law in particular, are the protection of the parties’ freedom of contract and the fulfillment of reasonable economic expectations. Tort law, on the other hand, is concerned with deterring carelessness, preventing accidents and distributing risk in a socially useful way. Where a product malfunctions and, as a result, is itself damaged, it can fairly be said that the product simply "has not met the customer’s expectations” — a disappointment that has traditionally been addressed through the breach of warranty remedies provided in the UCC (East River S. S. Corp. v Transamerica Delaval, supra, at 872). Furthermore, as the East River Court observed, "[t]he tort concern with safety is reduced when an injury is only to the product itself.” (Id., at 871.) In contrast, where, as here, the product was provably hazardous and the recovery sought is the cost of *305 eliminating the hazard or making the product safe, there is clearly more at stake than mere economic disappointment or frustrated expectations and the tort law’s concern for safety is directly implicated.
Those concerns point to an analysis that considers the effect of the proposed rule on the goals of accident prevention and the fair social distribution of costs. Both of these goals are advanced by a rule that would permit a remote user/owner to recover in strict products liability for the costs actually and reasonably incurred in eliminating or ameliorating a hazard posed by a dangerously defective product. Just as " '[a] consumer should not be charged * * * with bearing the risk of physical injury when he buys a product on the market’ ” (Schiavone Constr. Co. v Mayo Corp., 81 AD2d, supra, at 231 [Silverman, J., dissenting], quoting Seely v White Motor Co., 63 Cal 2d, supra, at 18, 403 P2d, supra, at 151), so too should the consumer be able to shift the cost to the manufacturer when the latter’s product poses an unreasonable safety risk requiring expensive repair or replacement. Indeed, the contrary rule would run directly counter to the tort aim of accident prevention, since it denies recovery to a conscientious remote purchaser who takes steps to ameliorate the risk of harm while permitting recovery by one who sits back and waits for an accident to happen (see, City of Greenville v Grace & Co., 827 F2d 975, 977).
Accordingly, under the facts in this case, I would hold that plaintiff may recover from Masonite the expenses it incurred in replacing the dangerously defective tiles. Since the majority’s holding denies plaintiff its tort recovery, I respectfully dissent from that part of its decision.
Chief Judge Wachtler and Judges Simons, Alexander, Hancock, Jr., and Bellacosa concur with Judge Kaye; Judge Titone dissents on Masonite’s appeal only and, as to that appeal, votes to affirm in a separate opinion.
On Masonite’s appeal, order reversed, with costs, and plaintiff’s products liability claim dismissed. On Circle’s appeal, order modified, with costs to Circle as against Masonite, by remitting to Supreme Court, New York County, for further proceedings in accordance with the opinion herein, and, as so modified, affirmed, with costs to plaintiff as against defendant Circle.

. The majority first considers the fact that the tiles’ defects were not "bound to produce a catastrophic accident” in connection with the first prong of the "intermediate approach,” i.e., the inquiry into the nature of the defect (majority opn, at 293,294). The majority then considers the same factor in connection with the second prong, i.e., the inquiry into the nature of the injury (id., at 294 [injury "was not an abrupt, cataclysmic occurrence”]).

. Interestingly, the majority opinion, which attempts to avoid deciding whether or not to adopt East River, actually stumbles on the same indeterminacy problem that concerned the East River Court, i.e., the difficulty and unpredictability of making an abstract legal determination about a particular product’s dangerousness.

. The majority’s assertion that "recovery of replacement costs always can be said to be sought for eliminating the hazard” (majority opn, at 294, n 2 [emphasis added]) is manifestly inaccurate. In East River (supra), Seely (supra), Trustees of Columbia Univ. (supra), Schiavone (supra), Dudley (supra) and Pennsylvania Glass (supra), to name just a few, the recovery for replacement costs was sought after an accident had occurred and the product itself was either substantially destroyed or rendered nonfunctional. Thus, in none of these cases could an argument be made that the plaintiff was seeking reimbursement for the cost of making the defunct product safe.