SECURITIES SETTLEMENT
CORPORATION,
Plaintiff,

v.

Lucy M. JACHERA, Defendant.

Lucy M. JACHERA, Third-
party Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC., Third-party
Defendant.

No. 89 Civ. 7922 (MBM).

United States District Court,
S.D. New York.

Aug. 22, 1991.

Doria G. Stetch, Martin P. Unger, Gaston & Snow, New York City, for plaintiff.

Andrew O'Connor, Liddle, O'Connor, Finkelstein & Robinson, New York City, for defendant and third-party plaintiff.

Barry J. Mandel, Baer, Marks & Upham, New York City, for third-party defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Securities Settlement Corporation ("SSC") sues defendant Lucy M. Jachera to recover the value of securities which SSC mistakenly delivered to Jachera's IRA securities account at the investment firm of Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"). Plaintiff now moves for summary judgment pursuant to Fed. R.Civ.P. 56. As appears below, plaintiff's motion is granted in part and denied in part.

Defendant Jachera has impleaded Merrill Lynch as the employer of the broker who traded the securities in issue at defendant's request. Merrill Lynch moves for summary judgment dismissing the third-party claim and, for the reasons stated below, Merrill Lynch's motion is granted.

### I.

Plaintiff SSC is a clearing broker. As such, it performs back office and record-keeping functions for its correspondent retail broker-dealers who sell securities to the public. Among SSC's duties are the receipt, delivery, and safeguarding of securities.

On December 2, 1982, defendant Lucy M. Jachera purchased 20,000 shares of Damson Institutional Energy ("Damson Institutional") and 20,000 shares of Consolidated Capital Institutional Properties ("Consolidated Institutional"), all at $1.00 per share, for her I.R.A. account at Thomson McKinnon Securities ("Thomson"). On April 29, 1986, Jachera transferred her I.R.A. account from Thomson to Moore & Schley, one of SSC's correspondent broker-dealers. In transferring the account, Thomson deliv-

ered the erroneous position of 20,000 shares of Damson Energy LP UT L P ("Damson Energy") rather than the correct position of 20,000 Damson Institutional.

In November 1986, Jachera again transferred her I.R.A. account, this time to Merrill Lynch. Jachera's broker at Merrill Lynch submitted to SSC an Authorization to Transfer Retirement Account (the "Transfer Statement") requesting that "20,000 DAMSON" and "20,000 CONSOLIDATED CAPITAL" be transferred from Moore & Schley to Merrill Lynch. SSC then executed the transfer, but mistakenly delivered the erroneous position of 20,000 Damson Energy securities found in Jachera's Moore & Schley account. (Finger Aff. ¶ 10) Furthermore, due to errors previously made by Thomson and SSC, Consolidated Institutional was written off Jachera's account.

In May 1987, SSC finally transferred the 20,000 shares of Consolidated Institutional to Jachera's Merrill Lynch account. But appearing instead on Jachera's Merrill Lynch account statement of May 29, 1987 were 10,052 shares of CONS CAP I OPPT TR 2 SBI—*i.e.*, Consolidated Capital Income Trust ("Consolidated Income"), at $13 per share. (Finger Aff., Ex. E) Jachera had never owned shares of Consolidated Income, but she insists that she was unaware that the shares reported were different from the Consolidated Institutional shares that she did own. At the same time, Jachera's Moore & Schley statement reflected a long position of 9948 shares of CONSOLIDATED CAP INST PRO INVT—*i.e.*, Consolidated Institutional. No price was reported for the latter security because it was not publicly traded.

In July 1987, Jachera instructed her broker at Merrill Lynch to sell the 10,052 shares of Consolidated Income for $132,-181.12, and use the proceeds to purchase 6,000 shares of Par Pharmaceutical Inc. for $164,278.75. (Jachera Aff., 4/4/91, ¶ 15) Before the time of sale, Consolidated Income's name had been changed to Income Opportunity Realty Trust ("Income"). Jachera insists she had no idea that the Income/Consolidated Income securities

were not the same ones she had purchased in 1982. Late in 1987, SSC discovered its error and realized that it had created a short position of 10,052 Income/Consolidated Income shares in Jachera's Moore & Schley account. (Finger Aff. ¶ 24) SSC then contacted Merrill Lynch about the mistake and discovered that Jachera had sold the position. In December 1987, when Jachera did not rectify the short position, SSC bought back the 10,052 units on the open market and compensated Moore & Schley for dividends never received. SSC's total cost was $104,872.29. (Finger Aff., Ex. D statement of 12/31/87)

In the months following the sale, Jachera engaged in several additional securities transactions, suffering substantial losses to her I.R.A. account as the market collapsed. By July 1988, Jachera's losses had completely erased her gain from the sale of the Income/Consolidated Income securities. (Jachera Aff., 4/4/91, ¶ 29) Jachera claims that she would not have suffered these losses, but for SSC's mistake that led her to believe that she had a gain with which to trade. (Jachera Aff., 4/4/91, ¶ 14)

During late 1988, SSC discovered its other mistake: delivering the wrong "Damson" security to Jachera's account in November 1986. Moore & Schley then sent a letter to Jachera asking her to return the Damson Energy security, but received no response. (Finger Aff. ¶ 12, Ex. B) In order to cover the short position, SSC bought back the 20,000 units on the open market at a cost of $10,000. (Finger Aff. ¶ 14) In 1989, Jachera finally sold the 20,-000 Damson Energy shares for $10,144.48. (Defendant's Rule 3(g) statement ¶ 7)

Through August 1989, Jachera continued to own the Damson Institutional and Consolidated Institutional securities she had purchased in 1982. Jachera's Damson Institutional securities at some point had been converted to 813 units of "Damson Institutional Limited Partnership," a publicly traded security. On September 6, 1989, SSC sold the 813 units for $1,521.88 and credited that amount against Jachera's debit balance then owing to SSC. (Finger Aff. ¶ 15) SSC also credited Jachera with

the dividends earned on the Damson Institutional securities before SSC sold them. (Finger Aff. ¶ 16) Jachera continues to receive dividends on Consolidated Institutional which SSC cannot sell because that security is not publicly traded. The dividends have been and continue to be credited against Jachera's debit balance. (Finger Aff. ¶ 26)

SSC brings the present action to recover the value of the debit balance in Jachera's account. As of March 8, 1991, the debit balance was $111,180.12.[1] Jachera has impleaded Merrill Lynch for indemnity or contribution should she be found liable. Both plaintiff SSC and third-party defendant Merrill Lynch now move for summary judgment against defendant Jachera.

SSC is a Delaware corporation with its principal place of business in New York City; Jachera is a New Jersey resident. The court has diversity jurisdiction under 28 U.S.C. § 1332(a).

## II.

A party is entitled to summary judgment only by demonstrating (1) that there is no genuine issue to be tried in the case, and (2) "that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is mandated when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In assessing the record, all ambiguities must be resolved and all factual inferences must be drawn in favor of the non-moving party. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2nd Cir.1991).

Under New York law, "a party who has made a mistaken payment to another based upon a unilateral mistake of fact may recover the payment unless the payee has changed his position to his detriment in reliance upon the mistaken payment." *National Bank of Canada v. Artex Industries, Inc. v. Seaport Marketplace, Inc.*, 627 F.Supp. 610, 614 (S.D.N.Y.1986); *Bank Saderat Iran v. Amin Beydoun, Inc.*, 555 F.Supp. 770, 773 (S.D.N.Y.1983); *see also Liberty Mutual Ins. Co. v. Newman*, 92 A.D.2d 613, 614, 459 N.Y.S.2d 806, 808 (2d Dep't 1983). Accordingly, plaintiff SSC is entitled to recover the mistakenly delivered securities unless defendant Jachera can prove that she justifiably relied on SSC's mistake and, in consequence, suffered a prejudicial change in position.

Jachera does not contest that SSC delivered the securities by mistake, but she invokes the defense that she relied on SSC's mistake to her detriment. Although plaintiff contends that defendant did not plead such a defense, arguing that defendant did not mention the affirmative defense of detrimental reliance in her answer and so waived that defense, *see, Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir.1984) ("[F]ailure to plead an affirmative defense in the answer results in 'the waiver of that defense and its exclusion from the case' "), defendant, in fact, asserted the reliance defense by stating that "plaintiff's claims are barred ... by the applicable doctrine of estoppel." (*See* Answer, "Fifth Affirmative Defense")

The elements of detrimental reliance are "lack of knowledge of the true facts, good-faith reliance, and a change of position." *Holm v. C.M.P. Sheet Metal, Inc.*, 89 A.D.2d 229, 235, 455 N.Y.S.2d 429, 433 (4th Dep't 1982), citing 21 N.Y.Jur., Estoppel, Ratification, and Waiver, § 60. A change of position is not cognizable unless the change is irrevocable, "or the sta-

---

**1.** Defendant's debit balance is composed of the following: (a) $104,872.29 for SSC's purchase of 10,052 shares of Income/Capital Income and repayment of dividends received; (b) $10,000 for the purchase of 20,000 shares of Damson Energy; (c) minus the amounts credited to defendant as a result of dividends she received on

the 813 units of Damson Institutional Limited Partnership and 20,000 shares of Consolidated Institutional; and (d) minus the $1,521.88 credited to defendant's account upon the sale of the 813 units of Damson Institutional Limited Partnership. (Finger Aff. ¶ 27)

tus quo can[not] be restored, without expense." Annotation, *What Constitutes Change of Position by Payee so as to Preclude Recovery of Payment Made Under Mistake*, 40 A.L.R.2d 997, § 2 at p. 1001 (1955). Although a payee may have spent money mistakenly delivered, she has not changed his position if she has used the money to pay living or business expenses, or even to make gifts, "unless such expenses were incurred or gifts made because of the receipt" of the mistaken payment. Annotation, *supra,* § 5 at 1015; *see also Castock Corp. v. Bailey*, 128 Misc.2d 1068, 1069–70, 492 N.Y.S.2d 921, 922 (Sup. Ct. Broome Co.1985) (change of position not a defense when defendant used money to discharge debt or make expenditures otherwise required). According to some authorities, courts should consider the financial condition of the payee to determine whether there was detriment. *See* Restatement of Restitution § 142, Comment b, at 569–70 (1937). For instance, if the size of the payment is trivial when contrasted with the payee's overall resources, detrimental reliance may not be an adequate defense. *See* Annotation, *supra,* § 5 at 1015.

Defendant contends she sold the Income/Capital Income securities in reliance on SSC's mistaken transfer of the Income/Capital Income securities, and thereafter, suffered a prejudicial change in position. Relying on her Merrill Lynch account statement—which reflected SSC's mistaken transfer—as an accurate record of what securities she owned, defendant sold the securities and then purchased other securities with the proceeds. Defendant maintains she never would have made the subsequent investments had she not "earned" windfall profits on the sale of the Income/Consolidated Income securities. Thus, she claims, the losses incurred on her IRA account following the sale totalling more than the entire value of her windfall were directly related to trading done with the proceeds of that sale. Consequently, defendant asserts that SSC's bookkeeping mistake led her to change her position such that she does not have the securities or the proceeds therefrom with which to compensate plaintiff.

Defendant's detrimental reliance argument is relevant only to her sale of the Income/Capital Income securities; she does not claim to have suffered a prejudicial change in position following the sale of the Damson Energy securities. Because her reliance defense is deficient as to the latter securities, there is no genuine issue as to SSC's right to recover their value. However, there are material issues as to whether defendant changed her position in consequence of the mistaken transfer of the Income/Capital Income securities.

■ Construing the evidence in favor of the non-movant defendant, I must assume that defendant relied in good faith on plaintiff's mistaken transfer. Although spending a mistaken payment is not usually sufficient to establish a change of position, that is true only when the payee has either retained the value of her purchase or obtained a pecuniary benefit from her expenditure, *e.g.,* the discharge of a debt. *See, e.g., Bank Saderat Iran v. Amin Beydoun, Inc.,* 555 F.Supp. at 774; *Castock Corp. v. Bailey,* 128 Misc.2d at 1069–70, 492 N.Y.S.2d at 922. Here, defendant has nothing to show for her sale of the disputed securities, having lost the proceeds in a series of ill-fated investments. Thus, the present case cannot be compared to cases where the payee retains the value of an expenditure and so has not changed position. *E.g., Western Casualty & Surety Company v. Kohm,* 638 S.W.2d 798, 801 (Mo.Ct.App.1982) (Purchase of car not sufficient type of change to bar restitution because purchaser received something of value for his money). Furthermore, if defendant's net worth is small relative to the size of the mistaken payment, defendant's "change of position" may well constitute a valid defense. *See* Restatement of Restitution § 142, Comment b, at 569–70. Plaintiff has not shown that defendant's means are significantly greater than the amount in controversy. Accordingly, defendant's reliance defense cannot be ruled out and there exists a material dispute as to whether defendant changed her position to her detriment relying on the mistaken payment.

For the above reasons, plaintiff's motion for summary judgment is granted as to the Damson Energy securities, but denied as to the Income/Capital Income Securities. Damages are awarded to plaintiff in the sum of $10,000 to cover its cost of repurchasing the 20,000 shares of Damson Energy. Plaintiff is denied prejudgment interest, however, pursuant to the custom of New York courts not to award interest in "cases involving the recovery of mistaken payments since the 'error which necessitated this litigation was the plaintiff's and it would be unfair to charge the defendant' for the lost interest." *National Bank of Canada*, 627 F.Supp. at 616, *citing Allcity Ins. v. Bankers Trust Company of Albany*, 80 Misc.2d 899, 902, 364 N.Y.S.2d 791, 794 (Sup.Ct. Albany Co.1975); *see also Liberty Mutual Ins. Co. v. Newman*, 92 A.D.2d 613, 615, 459 N.Y.S.2d 806, 809 (2d Dep't 1983).

Plaintiff's second claim for "money had and received" simply duplicates the mistaken payment claim.

Plaintiff's motion for summary judgment on its third claim for conversion of the securities is denied because there remain material issues which would have to be resolved before conversion damages could be awarded. Plaintiff cannot recover conversion damages incurred because of its own error, unless it can prove (i) that defendant knowingly traded the wrong securities and so relied unjustifiably on plaintiff's mistaken transfer, or (ii) that defendant did not suffer a prejudicial change of position. Barring such a finding, it would be inequitable to require repayment. While courts have ruled that "wrongful intent is not an essential element of conversion," *Leve v. C. Itoh & Co.*, 136 A.D.2d 477, 478, 523 N.Y.S.2d 512, 513 (1st Dep't 1988), *appeal denied*, 71 N.Y.2d 806, 530 N.Y.S.2d 109, 525 N.E.2d 754 (1988); *see also Pittston Warehouse Corp. v. American Motorists Ins. Co.*, 715 F.Supp. 1221, 1225 (S.D.N.Y.1989), *reconsideration denied* 739 F.Supp. 904 (1990), if conversion damages were allowable when a plaintiff is entirely at fault and a defendant no longer possesses the "converted" property or its value, then the detrimental reliance defense prescribed by the equitable doctrine of mistake would be wholly nullified. Consequently, because plaintiff has proved neither that defendant was aware of plaintiff's mistake, nor that defendant did not suffer a prejudicial change of position, summary judgment as to the conversion claim is denied.

### III.

Third-party defendant Merrill Lynch moves for summary judgment on all of defendant Jachera's third-party claims. Jachera contends that she is entitled to indemnification or contribution from Merrill Lynch based on her broker's alleged breach of fiduciary duty and negligence. New York law is settled that even absent an express agreement for indemnification, "one who was compelled to pay for the wrong of another [may] recover from the wrongdoer the damages paid to the injured party." *Hanley v. Fox*, 97 A.D.2d 606, 607, 468 N.Y.S.2d 193, 194 (3d Dep't 1983); *see also Trustees of Columbia University v. Mitchell/Giurgola Assoc.*, 109 A.D.2d 449, 451, 492 N.Y.S.2d 371, 374 (1st Dep't 1985). Likewise, New York law permits contribution and apportionment of liability among wrongdoers only "when they each owe a duty to plaintiff or to each other and by breaching their respective duties they contribute to plaintiff's ultimate injuries." *Trustees of Columbia University*, 109 A.D.2d at 454, 492 N.Y.S.2d at 375–76. Because Jachera has set forth neither a contractual basis for indemnification nor facts evidencing Merrill Lynch's breach of duty, negligence or otherwise culpable actions, Jachera's claims for indemnification and contribution must fail.

Jachera's claim that Merrill Lynch breached its fiduciary duty to her by preparing a statement of account listing securities which Jachera did not truly own is based on the false premise that an account statement is a guaranty of title. In fact, a broker need not warrant the ownership of the securities found in a customer's account. The broker has a duty merely "to use reasonable efforts to give his principal

information which is relevant to affairs entrusted to him." Restatement (Second) of Agency § 381 (1957); *see also Schenck v. Bear, Stearns & Co.*, 484 F.Supp. 937, 947 (S.D.N.Y.1979). "The scope of affairs entrusted to [the] broker is generally limited to the completion of a transaction." *Schenck*, 484 F.Supp. at 947. Accordingly, a broker is not obligated to make extraordinary efforts, as would have been necessary here, to discover the genealogy of the stock holdings in his customer's account.

Jachera's second claim against Merrill Lynch for negligently misrepresenting the securities Jachera owned is similarly unfounded for want of a breach of duty. To prove negligence, the complainant must show that the defendant breached a duty of reasonable care. *See Ramos by DeLeon v. 600 West 183rd Street*, 155 A.D.2d 333, 334, 547 N.Y.S.2d 633, 635 (1st Dep't 1989); *see also DiCerbo by DiCerbo v. Raab*, 132 A.D.2d 763, 764, 516 N.Y.S.2d 995, 997 (3d Dep't 1987). "One who owes a duty to another is obliged to perform it reasonably in light of any apparent risks." *McCluskey v. U.S.*, 583 F.Supp. 740, 749 (S.D.N.Y.1984). Jachera fails to show that her broker deviated unreasonably from the standard of care which brokers routinely adhere to upon acquiring a customer's account from another brokerage firm. Nor does she demonstrate the existence of "apparent risks" necessitating an unusually thorough inquiry into the history of her security holdings. Jachera herself claims that "it never occurred to [her] that the stock which was transferred may have been the wrong stock." (Brief in Opp. to Third–Party Defendant's Motion, p. 4) Consequently, Merrill Lynch's failure to take measures beyond the usual execution of its customer's order does not constitute negligence.

Jachera asserts two additional and equally meritless claims of breach of fiduciary duty and negligence in her Brief in Opposition to Merrill Lynch's motion. She claims that SSC's transfer of the wrong securities from the Moore & Schley account to the Merrill Lynch account was precipitated by her broker's carelessness in not spelling out the complete names of the securities in the Transfer Statement. The broker simply wrote "20,000 DAMSON" and "20,000 CONSOLIDATED CAPITAL." But Jachera presents no evidence suggesting that Merrill Lynch, by abbreviating the names of the securities, departed from usual practice. Moreover, SSC has never denied responsibility for the mistaken delivery of the securities or attributed its mistaken transfers to misstatements by Merrill Lynch. The record also shows that SSC, as the transferor brokerage firm, had the complete name and number of each security in question (Finger Aff., Ex. D), and that the Transfer Statement directed SSC to transfer only what was in the customer's account. (Grillo Aff., Ex. A) Without an established causal connection between Merrill Lynch's actions and plaintiff's ultimate injuries, Jachera's allegations of negligence cannot be sustained. *See Rogan v. Giannotto*, 151 A.D.2d 655, 656, 542 N.Y.S.2d 716, 717 (2d Dep't 1989) (Plaintiff firefighters' failure to establish causal connection between defendant's alleged negligence and firefighters' injuries precluded imposition of liability). Therefore, Jachera's allegations that Merrill Lynch caused SSC's mistake by acting negligently and in breach of its fiduciary duty are without foundation.

Jachera's final and untenable claim is that she is entitled to recover commissions received by Merrill Lynch on the trades in dispute and in subsequent trades made with the proceeds of the disputed securities. Jachera claims that Merrill Lynch was "unjustly enriched" by the commissions which, she argues, were the fruit of Merrill Lynch's negligence and breach of duty in preparing the Transfer Statement and statement of account. But, as set forth above, Jachera has failed to demonstrate any facts to show that Merrill Lynch's conduct was anything other than reasonable. Consequently, there is no basis to conclude that Merrill Lynch enriched itself unjustly.

Jachera has failed to show that there is a genuine issue of material fact about the propriety of Merrill Lynch's conduct in

transferring Jachera's securities and preparing her statement of account. Accordingly, third-party defendant Merrill Lynch's motion for summary judgment is granted and Jachera's third-party amended complaint is dismissed.

\*    \*    \*    \*    \*    \*

In summary, plaintiff SSC's motion for summary judgment is granted in part and denied in part and damages are awarded in the amount of $10,000.00. Third-party defendant Merrill Lynch's motion for summary judgment is granted and all claims against Merrill Lynch are dismissed.

SO ORDERED.