■ TRUMP VILLAGE SECTION 3, INC., Respondent, v NEW YORK STATE HOUSING FINANCE AGENCY, Appellant, and TRES, INC., et al., Respondents, et al., Defendant. [764 NYS2d 17]—Order, Supreme Court, New York County (Leland DeGrasse, J.), entered on or about August 12, 2002, which denied defendant-appellant's motion for summary judgment seeking dismissal of the cross claims asserted against it, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.

Plaintiff Trump Village Section 3, Inc., a moderate-income housing cooperative consisting of three buildings in the Coney Island section of Brooklyn, commenced the instant action against defendants New York State Housing Finance Agency (HFA), New York State Division of Housing and Community Renewal and several engineers, architects and contractors for their respective roles in an unsuccessful renovation project involving the deteriorating terraces at plaintiff's buildings.

Many of the facts relevant to this appeal are set forth in this Court's decision on a prior appeal in this case (292 AD2d 156 [2002], *lv dismissed* 98 NY2d 671 [2002].) Briefly stated, after becoming aware of structural problems with the buildings' terraces and spandrels due to spalling,[1] plaintiff applied to HFA for financing to pay the costs of repairs pursuant to Private Housing Finance Law § 60. In compliance with the statute, HFA retained an independent engineer, Edwards & Hjorth

---

1. "Spalling" is a condition where chunks of concrete from spandrels become loose and pose a risk of falling.

(E&H), who certified the scope of repairs, namely, the patching of the spalled portions of the terraces with nonshrink, quicksetting patching mortar to provide proper coverage for the reinforcing bars. Upon issuance of E&H's certification, plaintiff, HFA and DHCR entered into an agreement to repair the defects (the Agreement), under which HFA agreed to pay for the repairs and provide certain reimbursements to plaintiff. In return, plaintiff agreed to "irrevocably waive" any claims against HFA arising out of the repair work, except for willful acts or omissions or gross negligence by HFA.

Thereafter, HFA retained a joint venture consisting of codefendants Montoya-Rodriguez, P.C., Thornton-Thomasetti, P.C. and Lev Zetlin Associates (collectively Joint Venture) to perform construction management and professional services, and codefendant Tres, Inc. (Tres) to perform the actual construction work. Plaintiff endorsed the contracts hiring these entities after having its own engineering consultant, codefendant Amman & Whitney (A&W), review them. Some time in 1988, after it was determined that additional work was necessary, the contract with Tres was amended to include the additional work, but the recommendation of the Joint Venture as to how the work should be done was not included by HFA. In 1989, the Joint Venture and A&W certified that repairs were completed in compliance with the Agreement's specifications, after which plaintiff authorized payment to the contractors.

In 1995, a periodic inspection by an architect identified numerous instances of spalling and rusted reinforcing bars on the terraces. Plaintiff retained another expert, who concluded that the repairs completed in 1989 were substandard and recommended more extensive repair work. When HFA refused plaintiff's demand for repairs, this action ensued. Plaintiff's complaint asserted causes of action for breach of contract against all defendants and professional malpractice against the design and engineering professionals. The Joint Venture, A&W and Tres (collectively codefendants) filed separate cross claims seeking indemnification and contribution from the other codefendants, including HFA.

On a prior motion, HFA moved for summary judgment dismissal of plaintiff's breach of contract causes of action and all cross claims asserted against it. The motion court denied dismissal of plaintiff's contract claims, finding that HFA had not shown that it did not breach the Agreement as a matter of law, and also that it failed to demonstrate the absence of gross negligence to render the waiver clause operative. The court denied that branch of HFA's motion seeking dismissal of the codefendants' cross claims as "premature."

HFA perfected an appeal, but only from that portion of the court's order denying its motion seeking dismissal of plaintiff's direct claims. In our prior decision (292 AD2d 156 [2002]), we reversed the motion court and granted HFA's motion for dismissal of plaintiff's breach of contract causes of action asserted against it. We held that pursuant to the "clear contractual terms" of the Agreement, plaintiff waived any claims against HFA except those arising from HFA's willfulness or gross negligence, a showing plaintiff failed to make (id. at 158). We further held that HFA "only provided financing" and could not be liable for breaching certain "contractual supervisory responsibilities" that it did not have under the Agreement (id.). Lastly, we held that the recital clause of the Agreement evincing a goal of addressing plaintiff's "long-term" problems did not impose contractual obligations beyond those specifically set forth in the contract, "namely, financing, but not overseeing, the repairs" (id.).

Our decision in the prior appeal was issued on March 5, 2002. Based on that holding, in May 2002, HFA renewed its summary judgment motion seeking dismissal of the codefendants' cross claims for indemnification and contribution. HFA argued that this Court's holding that its duties were limited to financing, and not overseeing, repairs precluded any cross claims for indemnification and contribution as matter of law. The motion court denied HFA's motion as untimely, since it was not made within 120 days after the note of issue was filed (CPLR 3212 [a]). The court rejected HFA's argument that good cause for the delay existed by virtue of this Court's decision on the prior appeal, and further noted that HFA had failed to include copies of the pleadings to which the motion was addressed.

On appeal, HFA argues that the motion court erred in finding the motion was untimely. Additionally, HFA asserts that the codefendants' cross claims for indemnification and contribution fail as a matter of law since this Court's prior decision held that its sole duty under the Agreement was financing, which could not give rise to either of these claims. Moreover, HFA argues, the codefendants have failed to show that HFA owed any independent duty to them that could support such claims. As we agree with each of these arguments, we reverse and grant HFA's motion.

Initially, we find that the motion court improvidently exercised its discretion in declining to consider HFA's summary judgment motion on the grounds of untimeliness. CPLR 3212 (a) states that a party may not make a summary judg-

ment motion more than 120 days after filing a note of issue unless it obtains "leave of court on good cause shown" (see *Gonzalez v 98 Mag Leasing Corp.*, 95 NY2d 124, 128-129 [2000]). "A trial court thus has discretion in determining whether to consider a motion for summary judgment made more than 120 days after the filing of a note of issue" (*id.* at 129).

Although the codefendants emphasize the length of the delay, such focus ignores the fact that this motion could not have been brought any earlier on this specific ground. HFA's renewed motion to dismiss the cross claims was indisputably premised on this Court's determination in the prior appeal that HFA owed plaintiff none of the supervisory contractual duties alleged in the complaint. Once this Court issued its ruling, a completely new basis arose upon which HFA could base its arguments for dismissal.[2] Since the appellate adjudication of the nature of HFA's alleged duties owed plaintiff clearly had a bearing on the viability of the cross claims for contribution and indemnification, the motion court should have found that "good cause" existed for the late filing.[3]

In addition, since the motion addressed a threshold, potentially determinative issue, its consideration in advance of trial was in the interest of judicial economy (see *Cruz v City of New York*, 292 AD2d 209 [2002]; *Baijnauth v City of New York*, 286 AD2d 254 [2001]; *Goodman v Gudi*, 264 AD2d 758 [1999]). We further note that the motion was not made on the eve of trial, and thus neither disrupted the court's calendar nor left the codefendants without adequate time to frame a response (see *Cruz*, 292 AD2d at 209).

On the merits, we find that HFA has demonstrated entitlement to judgment dismissing the cross claims as a matter of law and the codefendants failed to raise a triable issue of fact. HFA has demonstrated that our decision in the prior appeal unequivocally held that HFA did not breach any contractual duty to plaintiff. In so finding, we necessarily rejected the allegations in plaintiff's complaint that HFA exercised "full and

2. We reject the codefendants' argument that HFA's renewed summary judgment motion is barred by the law of the case doctrine (see *Grullon v City of New York*, 297 AD2d 261, 265 [2002] [a prior judicial determination is binding as law of the case only on courts of coordinate jurisdiction, but does not bind a higher appellate court from reviewing a later determination]).

3. HFA's omission of several of the pleadings in its papers in support of its motion is not fatal in the present circumstances where such papers were submitted on the earlier motion and appeal, and the record on the instant appeal has been expanded to include these filings (see *Stiber v Cotrone*, 153 AD2d 1006, 1007 [1989], *lv denied* 75 NY2d 703 [1990]; *Ayer v Sky Club*, 70 AD2d 863, 864 [1979], *appeal dismissed* 48 NY2d 705 [1979]).

complete control over all aspects of the work," and that it failed to ensure that the contracts "properly specified the manner in which the work was to be done" and failed to ensure that the work "was performed in accordance with the contracts and was performed in a workmanlike manner."

The codefendants argue that this Court's discussion concerning the nature and extent of HFA's duties in the prior appeal was unnecessary to the disposition of the prior appeal, and therefore was mere dictum. They contend that our "core holding" was that HFA was not liable to plaintiff for breach of contract because under the terms of the Agreement plaintiff had waived any claims against HFA except for willful acts or gross negligence, and that plaintiff had failed to raise a triable issue of fact that HFA was guilty of such conduct.

The codefendants' assertion that the aspect of our holding limiting HFA's duties to financing was dictum is incorrect. Even though we also relied on the waiver provision to dismiss plaintiff's contract claims against HFA, our ruling on the substance of HFA's contractual duties went to the heart of plaintiff's claims and was neither unnecessary nor of secondary importance (cf. *Pollicino v Roemer & Featherstonhaugh*, 277 AD2d 666 [2000] [court's comments on merits of claim were clearly dicta where court dismissed claim on procedural grounds]). This Court's reliance on more than one reason to dismiss plaintiff's claims against HFA does not render one or the other of those reasons unnecessary.

In view of the above, the codefendants' indemnity claims against HFA should have been dismissed. "Indemnity involves an attempt to shift the entire loss from one who is compelled to pay for a loss, without regard to his own fault, to another party who should more properly bear responsibility for that loss because it was the actual wrongdoer" (*Trustees of Columbia Univ. v Mitchell/Giurgola Assoc.*, 109 AD2d 449, 451 [1985]; *see also Raquet v Braun*, 90 NY2d 177, 183 [1997]; *McDermott v City of New York*, 50 NY2d 211, 216-217 [1980]). Moreover, "[s]ince the predicate of common-law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine" (*Trustees of Columbia Univ.*, 109 AD2d at 453; *see also 17 Vista Fee Assoc. v Teachers Ins. & Annuity Assn. of Am.*, 259 AD2d 75, 80 [1999]).

The codefendants have not established that plaintiff's claims against them seek to hold them vicariously liable for a breach of duty owed by HFA to plaintiff. Our decision on the prior ap-

peal established that HFA owed no duty to plaintiff beyond that of financing. Clearly, plaintiff's causes of action against the codefendants for breach of contract and malpractice do not seek to hold them vicariously liable for HFA's breach of its financing duties. Moreover, to the extent that the codefendants assert that their liability for breach of contract and malpractice arising out of their inspection, certification and construction duties is vicarious in the sense that it was the result of HFA's negligence in determining the scope of the repairs, this argument is squarely rebutted by our holding on the prior appeal that HFA's duties were limited to "financing, but not overseeing, the repairs." (292 AD2d at 158.) In essence, because HFA's duties to the plaintiff were completely independent of the duties owed by the codefendants, there is no basis to shift the entire loss to HFA.

Indemnification also does not lie in this case because plaintiff has brought direct claims against the codefendants for breach of contract and malpractice. Accordingly, since "liability against any of these defendants would be based upon such defendant's own participation in the acts giving rise to the loss, that is, as an actual wrongdoer" (*Trustees of Columbia Univ.*, 109 AD2d at 453-454), these defendants are precluded from recovery against HFA on the basis of common-law indemnity (*id.*; *see also Rockefeller Univ. v Tishman Constr. Corp.*, 232 AD2d 155, 156 [1996], *lv denied* 89 NY2d 811 [1997]).

HFA is also entitled to summary judgment dismissal of the codefendants' claims for contribution. Contribution is generally available as a remedy "when 'two or more tort-feasors share in responsibility for an injury, in violation of duties they respectively owe[ ] to the injured person'" (*Garrett v Holiday Inns*, 58 NY2d 253, 258 [1983], quoting *Smith v Sapienza*, 52 NY2d 82, 87 [1981]). "A contribution claim can be made even when the contributor has no duty to the injured plaintiff [citations omitted]" (*Raquet v Braun*, 90 NY2d at 182). "In such situations, a claim of contribution may be asserted if there has been a breach of a duty that runs from the contributor to the defendant who has been held liable [citations omitted]. The 'critical requirement' for apportionment by contribution under CPLR article 14 is that 'the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought'" (*id.* at 182-183, quoting *Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.*, 71 NY2d 599, 603 [1988]).

The codefendants have failed to raise an issue of fact as to whether HFA breached any duty to either plaintiff or

themselves. As this Court has already held that HFA's contractual duties were limited to financing, not overseeing, the repairs, the codefendants' argument that HFA owed a duty of care with respect to its consultant's determination to limit the scope of repairs to patching must be rejected. Notably, the codefendants have failed to articulate how HFA should be held liable for the certification by its independent consultant as to the scope of repairs, when HFA is expressly required by the Private Housing Finance Law to obtain such certification (see Private Housing Finance Law § 60 [3] [a]). Nor, in light of our prior holding, are we persuaded that HFA owed some independent duty to the codefendants based on the fact that they may have relied on HFA's consultant's certification in performing their own duties.

More fundamental, however, is codefendants' failure to plead any predicate tort liability upon which their contribution claims may be based (see Board of Educ. of Hudson City School Dist. v Sargent, Webster, Crenshaw & Folley, 71 NY2d 21, 28 [1987]). Although plaintiff's complaint includes causes of action against the codefendants for professional malpractice, in addition to breach of contract, the crucial point here is that the damages sought by plaintiff on all of its causes of action are merely for economic loss. Where a plaintiff's direct claims against a codefendant seek only a contractual benefit of the bargain recovery, their tort language notwithstanding, contribution is unavailable (see Rothberg v Reichelt, 270 AD2d 760, 762 [2000]; Rockefeller Univ. v Tishman Constr. Corp., 240 AD2d 341, 343-344 [1997], lv denied 91 NY2d 803 [1997]).

In the present case, it is clear that plaintiff is seeking the benefit of its contractual bargain, namely, the cost of completing the defective repairs to the building's terraces (see Rothberg v Reichelt, 270 AD2d at 762 [plaintiff seeking recovery for a purely economic loss—the cost of repairs and the difference in value between what defendants were contractually obligated to provide and what plaintiff actually received]; Rockefeller Univ. v Tishman Constr. Corp., 232 AD2d at 155), and "the mere potential for serious physical injury or property damage is not enough to create a duty independent of the contract thereby authorizing recovery in tort" (id.). Thus, the codefendants "may not seek contribution from [HFA] where the alleged 'tort' is essentially a breach of contract claim" (Tempforce, Inc. v Municipal Hous. Auth. of City of Schenectady, 222 AD2d 778, 779 [1995], lv denied 87 NY2d 811 [1996]). Concur—Mazzarelli, J.P., Sullivan, Lerner, Friedman and Gonzalez, JJ.