■ SIMON LORNE et al., Respondents, v 50 MADISON AVENUE LLC et al., Respondents, and BOARD OF MANAGERS et al., Appellants, et al., Defendants. [886 NYS2d 1]—

Order, Supreme Court, New York County (Emily Jane Goodman, J.), entered December 26, 2008, which, to the extent appealed from, denied the motion by defendants-appellants condominium board of managers (the Board) and one of its individual members (David Moffitt) for summary judgment dismissing plaintiff unit owners' cause of action for breach of fiduciary duty as against them, and granted plaintiffs' cross motion for leave to serve an amended complaint adding additional defendant-appellant 50 Madison Avenue Condominium as a party and, inter alia, a new cause of action for a judgment declaring who, as between the sponsor defendants, on the one hand, and the condominium or the Board, on the other, is responsible for repairing the defective floor in plaintiffs' unit, unanimously reversed, on the law, without costs, defendants-appellants' motion granted and plaintiffs' cross motion denied. The Clerk is directed to enter judgment dismissing the complaint as against defendants-appellants.

Plaintiffs allege that the concrete slab or "substrate" under the hardwood floors in the unit they purchased from the sponsor defendants was not properly leveled and flattened, resulting in numerous loose floorboards and warping in some areas; that the sponsors acknowledged that the floors in the unit had been improperly installed and undertook to replace the floors; that after several unsuccessful attempts by the sponsors to correct the problem, plaintiffs decided to undertake the repairs themselves; that the Board demanded that plaintiffs sign a standard "Alteration/Installation Agreement" before commencing work; that plaintiffs proposed changes to the agreement so that it would reflect, inter alia, that the proposed work was not alterations but the completion of flooring in accordance with

the original plan; and that the Board demanded that plaintiffs pay it an unreasonable amount ($15,000 or $10,000) to retain counsel to review plaintiffs' proposed changes to its standard agreement.

The Board and its individual members moved for summary judgment dismissing plaintiffs' cause of action for breach of fiduciary duty on the ground that the Board's demands that plaintiff sign the alteration agreement and pay its attorney's retainer were made in good faith pursuant to express authority conferred in the offering plan and are therefore protected by the business judgment rule.

The Court of Appeals has decided that the appropriate standard by which the decisions of a board of managers of residential condominiums are reviewed "is analogous to the business judgment rule applied by courts to determine challenges to decisions made by corporate directors" (*Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530, 537 [1990]). "This 'deferential standard' that has become the hallmark of the business judgment rule requires the courts to 'exercise restraint and defer to good faith decisions made by boards of directors in business settings' . . . 'To trigger further judicial scrutiny, an aggrieved [unit owner] must make a showing that the board acted (1) outside the scope of its authority, (2) in a way that did not legitimately further the corporate purpose or (3) in bad faith' " (*Pelton v 77 Park Ave. Condominium*, 38 AD3d 1, 8-9 [2006] [citations omitted]).

Recognizing that standard, the motion court nevertheless denied the motion to dismiss the cause of action for breach of fiduciary duty as against the Board and David Moffitt, finding that plaintiffs had raised issues of fact whether the Board acted outside the scope of its authority and in bad faith.

In so ruling, the court found that plaintiffs had sufficiently alleged that, although the sponsor is not required to repair defects to concrete elements unless so requested by an independent Board member, the Board advised them that it had no obligation to take any action in connection with the necessary repair to the concrete substrate of their unit, and the court noted that the Board appeared to have taken that position in this lawsuit. It also found that a question of fact whether the Board's demand that plaintiffs sign a standard "Alteration/Installation Agreement" was made in good faith, because plaintiffs maintain that the necessary work is not a "renovation" or "alteration" of their apartment but the repair and correction of a construction defect and that the clear language of section S-4.1 of the condominium offering plan, entitled "Main-

tenance and Repairs of Units," applies only to "alterations" and is optional.

However, contrary to the court's reading of it, section S-4.1 specifically provides that each unit owner *"must* obtain the written Reasonable Approval of the Condominium Board before undertaking any extraordinary or *structural Repairs. The Board may condition its approval on [the unit owner's] compliance with the same requirements that apply to Unit Alterations (see* subsection S-5.1 below)" (emphasis added). Section B-8 of the condominium offering plan ("Glossary") includes the concrete slab or substrate underlying the floors in its definition of "Structural Components," and plaintiffs in their brief "do not question that the floor slab problem, and indeed, the entire floor installation, is a construction defect." Section P-3.8 of the offering plan provides that it is the sponsor's obligation to correct construction defects.

Plaintiffs admit that after the sponsor failed to install the hardwood flooring in their unit properly they "took over the installation of the floors." They retained an engineer, who advised them that the concrete substrate was uneven. They allege, in conclusory fashion, that the Board refused either to make the necessary repairs or to permit them to do so. However, that allegation is based on the Board president's statement that the Board was not going to involve itself in plaintiffs' dispute with the sponsors, and that statement was made in response to plaintiffs' May 24, 2007 letter, entitled "Construction Defect Correction Notice," notifying the Board that they intended to start reinstalling the floors within 10 days. Plaintiffs sent the letter after a copy of the Board's standard alteration agreement had been forwarded to their attorney. The agreement requires, in pertinent part, that unit owners wishing to make alterations to their unit provide the Board with a complete set of plans, etc.; secure proof of insurance covering the condominium, the managing agent and the unit owner; pay a refundable $5,000 deposit against possible damages and costs and a nonrefundable alteration review fee of $500; and assume all risks of damage to the building. It provides that said assumption of risk will not affect any contributory liability or third-party liability of others who cause damage or a problem, or the duty of the condominium to maintain or repair the building.

Plaintiffs then proposed numerous changes to the alteration agreement, which the Board determined were too numerous and complex for it to consider without advice. Thus, pursuant to section 5.2.4 (k) of the condominium's bylaws, which provides that the unit owner "shall pay or reimburse the Board for the

Costs and Expenses it incurs in connection with the review of the construction drawings . . . of the proposed Unit Alterations/ Repairs, [and] *the execution of such Building standard Unit Alteration agreement . . . including fees and disbursements of* the Board's architect, engineer, *attorneys*, professionals, consultants and Managing Agent'' (emphasis added), the Board requested a $15,000 retainer from plaintiffs so that it could hire an attorney to review their proposed changes.

Despite the Board's assertion that it was acting to further a legitimate interest of the condominium because alterations of structural components of a building have the potential of endangering or adversely affecting other unit owners, the motion court found that a question of fact was raised by plaintiffs' allegations that the floors were not fixed, that they themselves sought to fix them, that they obtained liability insurance to cover the work, and that consent was improperly withheld. However, it was not unreasonable for the Board to require plaintiffs to adhere to the same rules that apply to all other unit owners wishing to make structural repairs. Plaintiffs' opposition was insufficient to raise a question of fact as to the Board's good faith or whether it was acting within the scope of its authority and in furtherance of a legitimate purpose, and defendants-appellants' motion for summary judgment should have been granted as against the Board.

As to plaintiffs' cause of action for breach of fiduciary duty against David Moffitt, which is based on their claim that, as a result of a dispute over a tax abatement issue, he threatened at a July 10, 2007 meeting of the unit owners to ''make it very difficult'' for them to ever have their floors installed, it is undisputed that the Board actions that are the subject of plaintiffs' complaints of breach of fiduciary duty all predate Moffitt's election to the Board in mid-July of 2007. Thus, the cause of action should also have been dismissed as against Moffitt.

Finally, since the pertinent parts of the condominium offering plan are clear and unambiguous, plaintiffs' cross motion to amend the complaint to add the condominium as a party and to assert a cause of action for a declaratory judgment should have been denied. Concur—Andrias, J.P., Saxe, Sweeny and Freedman, JJ. [*See* 2008 NY Slip Op 33453(U).]