*92 OPINION OF THE COURT
Saxe, J.
This litigation arose because plaintiffs expectations for the penthouse apartment that it had agreed, preconstruction, to purchase were not met by the apartment as built. The question is whether plaintiff is left with any legal recourse, in view of the provisions of the purchase agreements, offering plan, and construction plans that defendants rely on in their current dismissal motion.
On a previous appeal, this Court modified the dismissal of plaintiffs original complaint, reinstating a cause of action for breach of contract (see 79 AD3d 587 [2010]). We are now asked to address the propriety of the motion court’s subsequent dismissal of both a new complaint served by plaintiff against the same defendants in a second action and an amended complaint plaintiff served in the first action in the wake of our reinstatement of a portion of the first complaint.
Factual and Procedural History
The First Action
Defendant CPS 1 Realty LP was the original sponsor of a condominium offering plan, dated December 7, 2005, for the sale of luxury residential condominium units at the Plaza Hotel in Manhattan, and defendant Plaza Residential Owner LP took over as sponsor in April 2006; both defendants are allegedly wholly owned by defendant El-Ad Properties NY LLC (those three defendants will be referred to collectively as Sponsor). Defendant Stribling Marketing Associates LLC was the selling agent under the condominium offering plan.
In August 2007, plaintiff, The Plaza PH2001 LLC, entered into two purchase agreements: one for a planned penthouse unit, at a price of $31 million, and the other for a smaller unit, apartment 1602, to be used for the household help employed in the penthouse residence.
When plaintiff’s representative was permitted to see the nearly completed penthouse in May 2008, the penthouse was different from the unit plaintiff had expected. Instead of a large, light and airy expanse of open living space with floor-to-ceiling 11-foot-high windows providing expansive views of Central Park, plaintiff found a living area broken up by several large columns that also blocked the view, with small, three-foot-tall windows beginning three feet from the floor and ending at the six-foot line where the sloped skylights in the ceiling began, and a *93 cramped feel to the room due to the low height at which the ceiling and skylights met the wall and windows. Instead of an open, light kitchen space with four large windows and a moderate-sized kitchen island surrounded by sufficient floor space, plaintiff found the kitchen floor space largely taken up by an excessively large island, and an obtrusive, steeply pitched ceiling ending at a height of six feet, which, as in the living room, gave a cramped feel to the breakfast area; in addition, the kitchen had only two small windows instead of four large ones, drastically diminishing the expected view.
Plaintiff also alleged that while the plans had showed the exterior wall of the penthouse as continuous with that of the lower floors, the exterior wall as constructed was set back approximately three feet, and a drainage grate not shown in any plans had been situated directly outside the exterior wall, below the living room and kitchen windows, inside a three-foot ledge. Based on these alleged changes to the penthouse as constructed, plaintiff first sought rescission of the contracts, then commenced this action.
The original complaint, the subject of the previous appeal, had asserted causes of action for breach of the purchase agreements and fraud, and sought rescission, return of the down payments and legal fees. The allegations included the failure to construct the penthouse in accordance with the plans, model or representations relating to such aspects of the units as room size, ceiling height, number and size of windows, layout, and other design details. Plaintiff also alleged that defendants deliberately failed to provide notice of the changes made, in an effort to deprive plaintiff of its right and ability to rescind the purchase agreements. The cause of action asserted against Stribling Marketing Associates LLC claimed fraudulent inducement based on the assertion that these defendants made representations, through the use of the model apartment relating to the penthouse’s layout and design, that they knew to be untrue.
Defendants’ motion to dismiss the original complaint in its entirety was based primarily on the “No Representations” provision contained in both purchase agreements, in which plaintiff acknowledged that it had not relied on “any architect’s plans, sales plans, selling brochures, advertisements, representations, warranties, statements or estimates of any nature whatsoever, whether written or oral, made by Sponsor, Selling Agent or otherwise,” except as represented in the purchase agreement or in the plan. The full clause reads as follows:
*94 “No Representations. Purchaser acknowledges that Purchaser has not relied upon any architect’s plans, sales plans, selling brochures, advertisements, representations, warranties, statements or estimates of any nature whatsoever, whether written or oral, made by Sponsor, Selling Agent or otherwise, including, but not limited to, any relating to the description or physical condition of the Property, the Building or the Unit, or the size or the dimensions of the Unit or the rooms therein contained or any other physical characteristics thereof. . . except as herein or in the Plan specifically represented-, Purchaser has relied solely on his or her own judgment and investigation in deciding to enter into this Agreement and purchase the Unit. No person has been authorized to make any representations on behalf of Sponsor. No oral representations or statements shall be considered a part of this Agreement. Purchaser agrees (a) to purchase the Unit, without offset or any claim against, or liability of, Sponsor, whether or not any layout or dimension of the Unit or any part thereof, or of the Common Elements, as shown on the Floor Plans on file in Sponsor’s office and [to be] filed in th[e] City Register’s Office, is accurate or correct, and (b) that Purchaser shall not be relieved of any of Purchaser’s obligations hereunder by reason of any immaterial or insubstantial inaccuracy or error. The provisions of this Article 20 shall survive the closing of title or the termination of this Agreement” (emphasis added).
The motion court dismissed the complaint, holding that this “No Representations’ ’ clause established a complete defense to plaintiffs claims as a matter of law. In addition, the court considered, and rejected, plaintiffs reliance on the provision of the condominium offering plan — which was incorporated by reference into the purchase agreements — providing for a right of rescission in the event the sponsor found it necessary to make material alterations in the plans. That provision reads:
“Any such changes, if material (for example, variations in square footage in excess of 5%) shall be disclosed by Sponsor in a duly filed amendment to the Plan .... No such change will be made if the same would materially adversely affect any Purchaser under an Agreement . . . unless . . . (iii) the *95 same is dictated by construction conditions at the Property (such as coordination of Building systems, conflicts with structural members or elements, conforming with Legal Requirements, unforeseen events, etc. and, in all cases, in good faith, reasonably necessary due to factors not within Sponsor’s reasonable control, and where no practicable alternative (in the exercise of sound construction management practices) exists), and in such event, Sponsor will, in the amendment disclosing such material adverse change, offer the affected Purchaser(s) the right, for at least 15 days, to rescind their Agreement^) and receive a refund of their Deposit(s) . . . However, as long as the layout and dimensions of a Residential Unit conform substantially to the Plans and Specifications, a Purchaser will not be excused from purchasing a Residential Unit by reason of a minor, non-material deviation or change and will not have any claim against Sponsor as a result thereof.”
The court held that the complaint “fail[ed] to describe any changes which, under these definitions, would be considered ‘material’ ” (2009 NY Slip Op 32228[U], *5 [2009]).
This Court disagreed in part with the motion court’s reasoning, reinstating a cause of action for breach of contract. In our view, while the allegations of the original complaint relied in part on the alleged breach of “extracontractual representations,” which reliance was precluded by the “No Representations” clause, it did not rely solely on the breach of the alleged extracontractual representations. Rather, the original complaint also asserted that the penthouse unit was constructed in a manner materially different from that set forth in the filed plans and specifications, contrary to the requirements of the offering plan, which required that the work be performed substantially in accordance with those filed plans and specifications and that material alterations be the subject of an amendment to the plan. This Court therefore held that
“plaintiff stated a cause of action for breach of contract by alleging that certain aspects of the finished penthouse apartment did not conform to the specifications of the condominium offering plan incorporated by reference into the Purchase Agreements, and defendants’ submissions failed to estab *96 lish grounds to dismiss the contract claim pursuant to CPLR 3211 (a) (1)” (79 AD3d at 587).
We upheld the dismissal of plaintiff’s fraudulent inducement cause of action, however, agreeing with the motion court that, because of the “No Representations” provision in the purchase agreements, plaintiff could not have relied on the alleged extra-contractual representations.
The Second Action
On March 22, 2010, before this Court ruled on plaintiffs appeal from the dismissal of its first complaint, plaintiff commenced a second action, based on essentially the same claims. Plaintiff offers two explanations: first, that when the IAS court declined to sign an order to show cause by which plaintiff sought to amend the original complaint, it directed the commencement of a new action, and, second, that the new action was authorized by CPLR 205 (a), which permits commencement of a new action within six months of dismissal of a lawsuit when that dismissal is not on the merits. This second complaint contained claims for breach of contract, fraud and negligent misrepresentation, breach of the covenant of good faith and fair dealing, and deceptive trade practices under General Business Law § 349, and a claim under 15 USC § 1703 (a), known as the Interstate Land Sales Act.
Defendants moved to dismiss the complaint in the second action. By order entered November 30, 2010, the motion court granted the motion on the ground that the action was barred by the res judicata effect of the order dismissing the first action, since “[plaintiff’s previous complaint and the current complaint[ ] stem from the same transaction and seek the same damages” (30 Misc 3d 1213[A], 2010 NY Slip Op 52361[U], *5 [2009]). This is the first of the four orders that we consider on the present appeal.
Following this Court’s order entered December 21, 2010 reinstating the breach of contract claim in the first action, plaintiff took two separate steps. On January 21, 2011, plaintiff moved to vacate the November 30, 2010 order dismissing the complaint in the second action. It contended that the res judicata reasoning of the motion court was no longer valid in view of the reinstatement. Plaintiff also sought consolidation of the two actions. By order entered March 16, 2011, the court denied the motion to vacate its dismissal of the second action and to consolidate. This is the second order we consider on this appeal.
*97 Further Activity in the Reinstated First Action
In addition to its January 21 motion seeking to revive its second action, on January 28, 2011 plaintiff served an amended complaint in the reinstated first action, “as of right,” pursuant to CPLR 3025 (a). The amended complaint contained five causes of action: for declaratory relief, specific performance, breach of contract, breach of the covenant of good faith and fair dealing, and violation of General Business Law § 349 based on alleged deceptive trade practices. On March 4, 2011, defendants moved to dismiss the amended complaint in the first action, and, by order entered May 4, 2011, the court granted the motion, holding that the amended complaint: “seeks to re-assert claims that were dismissed, and later affirmed as properly dismissed by the Appellate Division, First Department. Such amendment is prejudicial and would amount to plaintiff seeking a second bite at the apple on matters already dismissed on the merits.” Defendants had also moved for release of the down payments and for attorneys’ fees as the “prevailing party” under paragraph 35 of the purchase agreements. The order denied that branch of the motion, holding that defendants failed to “set forth any entitlement to same at this juncture.” This May 4, 2011 order is the third one we consider on this appeal.
Defendants moved for reargument of their motion for attorneys’ fees and the release of the down payments, which the motion court denied by order entered June 30, 2011; the order stated that the “original summons and complaint [in the first action] was reinstated upon this Court’s dismissal of the amended summons and complaint,” and scheduled a preliminary conference. It appears from this order that in the motion court’s view, when it dismissed the amended complaint on May 4, 2011, the reinstated original complaint remained extant.
However, after the preliminary conference, apparently upon an oral request by counsel without any written notice of motion, the court issued an order, entered August 22, 2011, vacating its June 30, 2011 order “and its reinstatement of the original complaint” and dismissing the first action with prejudice. This is the fourth order considered on this appeal; although an appeal may not lie as of right from this order under CPLR 5701, we address the order on the merits pursuant to a grant of leave.
Discussion
The main issue to be addressed here is whether the documents submitted by defendants on the motion to dismiss the amended complaint succeeded, where the first dismissal motion *98 failed, in conclusively establishing that plaintiff cannot prevail on its claims.
But first we address the preliminary issues. Initially, the first order on appeal correctly dismissed the second action based on the doctrine of res judicata. At that point, the only extant ruling was Supreme Court’s ruling dismissing the first complaint. We reject plaintiffs argument that res judicata did not apply because the phrase “with prejudice” was deleted from the form of the dismissal order. Even where an order does not explicitly so state, a dismissal is on the merits for res judicata purposes if the order addressed the merits and was not issued purely on account of technical pleading deficiencies (see Jericho Group Ltd. v Midtown Dev., L.P., 67 AD3d 431 [2009], lv denied 14 NY3d 712 [2010]; Feigen v Advance Capital Mgt. Corp., 146 AD2d 556, 558 [1989]). By its terms, the order addressed the merits of the complaint. Further, the pending appeal did not alter the applicability of the doctrine of res judicata at that time (see Petrella v Siegel, 843 F2d 87, 90 [2d Cir 1988]).
We also affirm the second order on appeal. The second action was improperly commenced, and this Court’s reinstatement of a portion of the first complaint did not retroactively render commencement of the second action proper.
However, the motion court erred when, in its third order, entered May 4, 2011, it dismissed in its entirety the amended complaint in the first action. The short form order stated only that “[t]he amended summons and complaint seeks to re-assert claims that were dismissed, and later affirmed as properly dismissed,” and that “[s]uch amendment is prejudicial and would amount to plaintiff seeking a second bite at the apple on matters already dismissed on the merits,” and also observed that the amended complaint was filed without leave of the court.
The May 4, 2011 order seems to imply that while the reinstated portion of the complaint in the first action remained extant, plaintiffs attempt at its amendment was procedurally and substantively improper. Notably, however, plaintiff was entitled to amend its reinstated complaint under CPLR 3025 (a), which allows a party to amend its pleading once without leave “within twenty days after service of a pleading responding to it.” The permitted amendments range from minor corrections, to the addition of substantive elements, to the addition of new causes of action (see Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3025:l, C3025:3).
*99 Once plaintiff served the amended complaint, the original complaint was superseded, and the amended complaint “became the only complaint in the action” (Hummingbird Assoc. v Dix Auto Serv., 273 AD2d 58 [2000], lv denied 95 NY2d 764 [2000]). The action was then required to proceed “as though the original pleading had never been served” (Halmar Distribs. v Approved Mfg. Corp., 49 AD2d 841, 841 [1975]).
The amended complaint must therefore be analyzed as must any complaint on a CPLR 3211 motion; we construe the complaint liberally, accepting as true the facts alleged, and according plaintiff the benefit of every possible inference (see 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 151-152 [2002]). Of course, this Court’s ruling regarding the sufficiency of a portion of the original complaint’s breach of contract claim constitutes the law of the case and remains controlling to the extent the issues raised in the original complaint and addressed by our decision are presented in the amended complaint (see Fusco v Kraumlap Realty Corp., 1 AD3d 189 [2003]). But our previous finding that defendants “failed to establish grounds to dismiss the contract claim pursuant to CPLR 3211 (a) (1)” does not preclude reexamination of the amended complaint’s restated contract claim pursuant to CPLR 3211 (a) (1), based on evidence not submitted on the first dismissal motion. That is, by amending the complaint, plaintiff gave defendants a renewed opportunity to offer documentary evidence conclusively disproving the amended complaint’s material allegations. Defendants took advantage of this opportunity by submitting the condominium offering plan and amendments to it, along with the purchase agreements, in support of their argument that the documentary evidence conclusively disproves plaintiffs claims.
The first through third causes of action in the amended complaint are founded on the breach of contract claim. The first seeks a judgment declaring that the sponsor was required to proffer an amendment to the condominium offering plan detailing the changes to the plans, and that plaintiff is entitled to a right of rescission and the return of its deposits, in view of the alleged material adverse changes made to the original plans for the penthouse unit. The second seeks specific performance, demanding a judgment directing the sponsor to amend the offering plan and set out the changes to the plans for the unit. The third seeks monetary damages, in the amount of plaintiffs down payments, for the alleged breach of contract.
*100 A breach of contract claim should, of course, be dismissed under CPLR 3211 (a) (1) if the contract itself precludes the claim (see 150 Broadway N.Y. Assoc., L.P. v Bodner, 14 AD3d 1, 5 [2004]). Defendant continues to rely on the “No Representations” clause of the purchase agreements as conclusively precluding plaintiff from relying on alleged precontractual or extracontractual promises. However, as we previously held, plaintiff may have a viable claim under the contract to the extent the amended complaint pleads a breach of the terms of the purchase agreements, the offering plan, or the filed plans and specifications (see 79 AD3d 587 [2010]).
Review of the amended complaint discloses that many of plaintiff’s allegations are still grounded in extracontractual statements and promises, and are therefore precluded by the “No Representations” clause. For example, the introductory factual allegations cite to “the marketing materials, the model apartments, the website and the physical mock-ups of the duplex [p]enthouse shown to plaintiffs representatives,” as well as the sales agent’s oral representations promising such characteristics as “opulent grandeur.” However, elsewhere in the amended complaint, plaintiff alleges a breach of the Sponsor’s contractual obligations based on the alleged failure to build the penthouse in accordance with the plans and specifications, and the making of material alterations to those plans and specifications without notice to plaintiff.
Among the alleged material alterations to the plans are the steeply sloped ceiling that drops to a height of only six feet where it meets the wall and banks of windows; the reduction in the number of kitchen windows from four to two; the presence of multiple large columns blocking what the plans had displayed as a large airy open living space containing one small column; and the addition of the drainage grate outside the exterior wall, which necessitated other changes, such as setting the unit’s exterior wall back several feet and reducing the size of the windows along that wall.
These allegations are not barred by the “No Representations” provision, nor are they precluded by any other, general provisions of the purchase agreements. Defendants point to the contract provision entitled “Construction,” which provides that
“[t]he issuance of a temporary or new permanent Certificate of Occupancy for all or any portion of the Building shall be deemed presumptive evidence *101 that renovation of the Building or of such portion of the Building and its appurtenances and the Residential Units therein has been substantially completed in accordance with th[e] [Offering] Plan and the Plans and Specifications.” However, this clause cannot invalidate or negate the requirement of the offering plan, incorporated into the purchase agreements, that if the sponsor intends to implement material changes to the filed plans and specifications, it must amend the plans and notify the purchasers and allow for a right of rescission.
Defendants also rely on provisions of the offering plan as grounds to dismiss under CPLR 3211 (a) (1). To challenge plaintiffs claim regarding the addition of large columns in the living room, defendants rely on the ninth amendment to the offering plan, in which the sponsor reported “the relocation of vertical shafts and the movements of walls in order to complete the coordination of the HVAC systems and infrastructure,” and appended new penthouse floor plans, referenced as exhibit C. If this Court were prepared to assume that it is capable of correctly understanding the notations on the floor plan without the assistance of a witness’s explanation, those floor plans could, upon examination, arguably support the conclusion that the presence of columns between the penthouse’s living room and the foyer area, as well as one small column in the room, were reflected in the submitted floor plan. However, it seems ill advised for this Court to presume that level of expertise in this context.
Even if this Court were capable of interpreting the submitted floor plan as a matter of law, and upon doing so were to preclude plaintiff’s claim regarding additional columns, nevertheless, plaintiff claims other alterations to the plans that are not conclusively disproved by the submitted documents.
For example, defendants’ submissions fail to conclusively disprove plaintiffs claim with regard to ceiling heights. The offering plan originally specified that the height of residential units “will generally be nine feet to eleven feet, varying from floor to floor,” and that with ceiling heights in the kitchens, powder rooms, bathrooms and foyers would be approximately nine feet, with the proviso that they “may vary.” As defendants point out, the ninth amendment provided for reductions in ceiling heights in the kitchens, powder rooms, bathrooms and foyers from 9 feet to 8V2 feet. Of course, the very fact that defend *102 ants perceived the need to include in an amendment to the offering plan this six-inch reduction in ceiling height tends to indicate that such a change in the plan may be a material alteration requiring a formal amendment to the plan— notwithstanding the provision’s conclusion that the six-inch reduction in ceiling heights “reflect changed specifications which are immaterially different from those initially described in the Plan.” In any event, a sloped ceiling that comes down to a height of six feet would seem a far more substantial material alteration than a reduction to 8V2 feet. Moreover, the provision of the ninth amendment that reports reductions in height for the kitchens, powder rooms, bathrooms and foyers specifically excludes “the ceiling heights in the principal living spaces of the Residential Units.”
As to plaintiff’s claim that the windows are substantially smaller and fewer than called for in the plans and specifications, it should be noted that defendants have not actually submitted copies of the filed plans and specifications, so as to contradict that claim. Rather, defendants essentially call into question whether plaintiff can establish that anything in the plans and specifications was materially altered by the windows as constructed, asserting that there is nothing in the documents they submitted that provides for floor-to-ceiling windows. This amounts to a challenge, impermissible on this motion, to plaintiffs ability to prove that the filed plans and specifications provided for floor-to-ceiling windows; it does not constitute a submission of documents conclusively disproving the claim. But it is worth observing that the plans submitted by defendants actually indicate a bank of four windows in the kitchen; a reduction to two windows may well constitute a substantial, material change, especially in combination with other alterations to the plans.
Similarly, plaintiffs claim that the inclusion of the drainage grate outside the exterior, below the living room and kitchen windows, constituted or created a material alteration to the filed plans and specifications is not disproved by the submitted documents. The documents also fail to disprove the other alleged design changes that were apparently required to accommodate the drainage grate, namely, the setting back of the unit’s exterior wall and the reduction in the size of the windows along that wall.
Defendants emphasize that the sponsor has broad discretion and flexibility to modify the units during construction. *103 They point to the floor plans’ warning that “[a]ll dimensions are approximate and subject to normal construction variances and tolerances,” and that “[s]quare footage exceeds the usable floor area.” These provisions, too, fail to constitute sufficient grounds for dismissal of the complaint under CPLR 3211 (a) (1). They cannot negate the provision of the offering plan, incorporated in the purchase agreements, that imposed on the sponsor an affirmative duty to file an amendment to the plan for any material changes that would materially adversely affect the purchaser, “for example, variations in square footage in excess of 5%.” We cannot properly determine as a matter of law at this juncture whether the effect of the alleged changes, in the windows and ceiling heights and the placement of the exterior wall and drainage grate, constituted sufficiently material changes that they should have been the subject of an amendment to the offering plan. Since plaintiffs reliance on these alleged alterations to the plans and specifications is not precluded by any of the documents submitted on defendants’ motion, defendants have failed to establish a right to dismissal.
The allegation that a breach of contract was also established by a lack of promised services and facilities may seem difficult to press, in the face of the offering plan provision warning that at first some of the services and facilities described in the plan may not be available; however, that provision does not absolutely preclude the possibility that a failure of services or facilities may constitute a breach of contract. It would be more appropriate to address this claim on the merits than on the pleadings alone.
In sum, the first through third causes of action include claims that the construction of the penthouse created material alterations to the filed plans, without the notice and right of rescission required by the purchase agreements. These allegations are sufficient to state a cause of action, because they are not entirely precluded by the “No Representations” clause or any other submitted documents.
The fourth cause of action asserts a breach by the sponsor of the implied covenant of good faith and fair dealing, focusing primarily on the sponsor’s alleged promises in the course of marketing the unit that the planned penthouse would have “spectacular” and “magnificent” views and high ceilings, and the expectations created by the model, but also including reference to the failure to disclose material alterations to the filed plans. To the extent this cause of action is not precluded by the *104 “No Representations” clause, we view it as duplicative (see Amcan Holdings, Inc. v Canadian Imperial Bank of Commerce, 70 AD3d 423, 426 [2010], lv denied 15 NY3d 704 [2010]).
Plaintiffs fifth cause of action, alleging deceptive trade practices on the part of both the sponsor and the selling agent, pursuant to General Business Law § 349, fails as a matter of law because the claimed violations do not have “a broad impact on consumers at large” (see Thompson v Parkchester Apts. Co., 271 AD2d 311, 311 [2000]). We need not address defendants’ challenge to a purported Martin Act claim, since the complaint contains no such claim.
Finally, we reject defendants’ contention that in any event, as a matter of law, the complaint fails to state a breach of the purchase agreement for unit 1602. The lack of an explicit contingency provision linking the two units is not dispositive; the allegations of the complaint are sufficient for these purposes.
Accordingly, the order of the Supreme Court, New York County (Joan M. Kenney, J), entered November 30, 2010, which, among other things, granted the motion to dismiss the complaint filed under index No. 600732/10 (second action) and award attorneys’ fees, should be affirmed, without costs. The order, same court and Justice, entered March 16, 2011, which denied plaintiff’s motion to, among other things, vacate the order entered November 30, 2010 and consolidate the second action with an earlier action filed by plaintiff under index No. 602673/08 (first action), should be affirmed, without costs. The order, same court and Justice, entered May 4, 2011, which, to the extent appealed from as limited by the briefs, granted the motion to dismiss the amended complaint in the first action, should be modified, the motion denied as to the first, second, and third causes of action, and otherwise affirmed, without costs. The order, same court and Justice, entered August 22, 2011, which sua sponte vacated an order entered on or about June 30, 2011 reinstating the original complaint in the first action, and dismissed the first action with prejudice, should be modified in accordance with the foregoing, so as to vacate the dismissal of the first action, and otherwise affirmed, without costs.
Sweeny, Freedman and Manzanet-Daniels, JJ., concur with Saxe, J.P.