OPINION OF THE COURT
Barbara Jaffe, J.
By notice of motion dated May 2, 2012, third-party defendant Industrial Window Corp. (IWC) moves pursuant to CPLR 3211 (a) (1) and (7) for an order dismissing plaintiffs first and second causes of action and so much of 112 Central Park South, LLC’s (112 CPS) complaint and cross claims by which it seeks to hold it vicariously liable for the claims asserted by plaintiff in its first and second causes of action, the third-party complaint against it, and all cross claims against it. 112 CPS and J.T. Ma-gen & Co., Inc. (JT Magen) oppose.
By notice of motion dated June 6, 2012, 112 CPS moves pursuant to CPLR 3211 (a) (1), (3) and (7) for an order dismissing plaintiffs first and second causes of action. Plaintiff opposes.
By notice of motion dated October 27, 2011, third-party defendant Roslyn Engineering Associates, P.C. (Roslyn) moves pursuant to CPLR 3212 for an order dismissing third-party plaintiff 112 CPS’s claims against it. 112 CPS opposes.
By notice of motion dated January 18, 2012, third-party defendant DKS Contractors, Inc. (DKS) moves pursuant to CPLR 3211 (a) (5) and (7) for an order dismissing 112 CPS’s claims against it. 112 CPS opposes.
*383 I. Background
Plaintiff is a cooperative apartment corporation that owns a 29-story apartment building at 110 Central Park South in Manhattan. Defendant 112 CPS was responsible for designing, contracting, and supervising the gut renovation of the premises and the addition of three stories. JT Magen was the general contractor for the renovation, and hired subcontractors, including IWC. The building was constructed pursuant to an offering plan, and related documents, which outline how the building was to be renovated. After the renovation was complete, tenants discovered latent defects in the property which they believe are related to deviations from the offering plan.
Plaintiff commenced this action by filing and serving a summons with notice and thereafter with a complaint on February 7, 2011. As against 112 CPS, plaintiff alleges that it breached several provisions of the offering plan, breached an “implied housing warranty under the common law that the construction of the building be performed in a skillful and workman like manner, was negligent in p[er]forming its duties to supervise and ensure proper construction, and made misrepresentations about its compliance with the Offering agreement.” On February 23, 2011, 112 CPS filed its answer, in which it also asserted cross claims against JT Magen and Epic Mechanical Contractors, LLC (Epic).
On May 9, 2011, 112 CPS commenced a third-party action against, as pertinent here, Costa Kondylis & Partners, LLC (CKP), Roslyn, IWC, DKS, Innovative Carpentry (Innovative), JT Magen, and Epic. In its first and second causes of action, 112 CPS alleges, respectively, common-law indemnification and contribution. The third, fourth, and fifth causes of action, brought against CKP in particular, set forth causes of action for breach of the express warranty that the work would be free of defect, breach of an implied warranty to deliver a building fit for its intended use, and breach of a duty of reasonable care.
On June 27, 2011, IWC served all parties with its answer to the third-party action. On July 27, 2011, third-party defendant IWC served a fourth-party complaint against DeMayo Construction, Inc. (DeMayo). On August 11, 2011, Roslyn filed an answer to the third-party complaint, and on September 12, 2011, 112 CPS served an amended third-party complaint on all parties, as to which Roslyn and Innovative filed answers on September 23, 2011. On September 19, 2011, DeMayo served its answer to the fourth-party complaint. On September 28, 2011, Roslyn served *384 all parties with its answer to the cross claims of third-party Innovative. On October 11, 2011, IWC served its answer to the amended third-party complaint. On November 2, 2011, Innovative answered IWC’s cross claims.
II. 112 CPS’s and IWC’s Motions to Dismiss Plaintiffs Claims
Pursuant to CPLR 3211, a party may move for an order dismissing a cause of action against it on the ground that the pleading fails to state a cause of action. In deciding the motion, the court must liberally construe the pleading, “accept the facts as alleged ... as true, accord [the non-moving party] the benefit of every possible favorable inference, and determine only whether the alleged facts ... fit within any cognizable . . . theory.” (Leon v Martinez, 84 NY2d 83, 87-88 [1994].)
A. Contentions
Arguing that the New York Attorney General has the exclusive right to pursue claims related to a cooperative offering plan, 112 CPS contends that plaintiff’s first cause of action must be dismissed for lack of standing, and is joined by IWC in asserting that plaintiffs first and second causes of action are barred by the limited warranties in the offering plan. They also maintain that plaintiffs second cause of action must fail absent any housing warranty implied under the common law. IWC also argues that the issuance of the certificate of occupancy is presumptive evidence that the building met the specifications set forth in the offering plan.
Plaintiff contends that 112 CPS waived its right to assert a lack of standing when it failed to include the argument in its answer or in a pre-answer motion, and denies that the Martin Act deprives it of standing. It maintains that an implied housing warranty exists under common law and is not barred by the offering plan, and that its breach of contract claim is separate from, and not precluded by, the limited warranty in the offering plan. Plaintiff also contends that 112 CPS cannot rely on the offering plan in its motion to dismiss because it failed to plead documentary evidence as an affirmative defense.
B. Martin Act
“[A] private litigant may not pursue a common-law cause of action where the claim is predicated solely on a violation of the Martin Act or its implementing regulations and would not exist but for the statute. But, an injured investor may bring a common-law claim (for fraud or otherwise) that is *385 not entirely dependent on the Martin Act for its viability. Mere overlap between the common law and the Martin Act is not enough to extinguish common-law remedies. . . . [T]o hold that the Martin Act precludes properly pleaded common-law actions would leave the marketplace less protected than it was before the Martin[ ] Act[’s] passage, which can hardly have been the goal of its drafters.” (Assured Guar. [UK] Ltd. v J.P. Morgan Inv. Mgt. Inc., 18 NY3d 341, 353 [2011] [internal quotation marks omitted].)
As plaintiffs first cause of action is for common-law breach of contract and not for a violation of the Martin Act, plaintiff has standing to bring this cause of action. (See also Sapphire Inv. Ventures, LLC v Mark Hotel Sponsor LLC, 2013 NY Slip Op 31564[U] [Sup Ct, NY County 2013] [Martin Act does not necessarily extinguish non-statutory claims].) Consequently, plaintiffs argument that 112 CPS waived its right to argue standing is moot.
C. Breach of Implied Housing Warranty
The common-law implied housing warranty was conceived in Caceci v Di Canio Constr. Corp. (72 NY2d 52, 59 [1988]), where the Court recognized that a home buyer who signs a contract of sale prior to construction cannot inspect the premises, and thus has “no meaningful choice but to rely on the builder-vendor to deliver what was bargained for — a house reasonably fit for the purpose for which it was intended.” The Court then observed that “the two parties involved . . . generally do not bargain as equals in relation to potential latent defects from faulty performance.” (Id.) Thus, even if not stated expressly in a contract, a buyer should be able to assume that a new house is fit to live in. (Id.)
The New York State Legislature was considering a similar statutory housing warranty when Caceci was decided. (Fumarelli v Marsam Dev., 92 NY2d 298, 303-304 [1998].) Guided by Caceci, the legislature conformed the draft statute to it, adding terms from Caceci such as “housing merchant implied warranty” and “constructed in a skillful manner.” (Id.) The statute was passed as General Business Law article 36-B, providing a warranty for all newly constructed homes, condominiums, and cooperatives, of five stories or less. (Id.) While builders may craft their own warranties, they must meet the minimum standards outlined in the statute. (General Business Law § 777-b.)
In dicta, the Court of Appeals stated that General Business Law article 36-B codifies the common-law rule in Caceci. (Mat *386 ter of Roberts Real Estate v New York State Dept. of State, Div. of Licensing Servs., 80 NY2d 116, 122 [1992].) Later, it found no common-law implied warranty beyond that set forth in General Business Law article 36-B because the statute abrogates the common law and “General Business Law article 36-B is a full, effective, and realistic substitute for the protections and rationale recognized in Caceci.” (Fumarelli, 92 NY2d at 302.)
As the statute applies only to buildings of five stories or less, an issue arises as to whether the common-law implied housing warranty survives for buildings taller than five stories. Trial courts considering this question do not agree. (Compare Brine v 65th St. Townhouse LLC, 20 Misc 3d 1138[A], 2008 NY Slip Op 51780[U] [Sup Ct, NY County 2008] [common-law warranty exists for buildings over five stories], with Bradley v 50 Orchard St. Assoc. LLC, 2012 NY Slip Op 30948[U] [Sup Ct, NY County 2012] [General Business Law article 36-B completely abrogates common-law warranty, leaving no common-law warranty for buildings over five stories]; Lorne v 50 Madison Ave., LLC, 2008 NY Slip Op 33453[U] [Sup Ct, NY County 2008] [same], revd on other grounds 65 AD3d 879 [1st Dept 2009].)
In Caceci, the Court recognized that the plaintiffs had no meaningful choice but to rely on the builder to construct a home that was fit to live in, and earlier cases cited therein implied a warranty for family homes, not large commercial premises. (Whitman v Lakeside Bldrs. & Developers, 99 AD2d 679 [4th Dept 1984] [new house]; De Roche v Dame, 75 AD2d 384, 387 [3d Dept 1980] [single-family home, noting that “purchaser is not in an equal bargaining position with the builder-vendor of a new dwelling”]; Dunn v Bloom, 15 AD2d 687 [3d Dept 1962] [new home]; Centrella v Holland Constr. Corp., 82 Misc 2d 537 [Suffolk Dist Ct 1975] [new home]; Staff v Lido Dunes, Inc., 47 Misc 2d 322, 325 [Sup Ct, Nassau County 1965] [“one family dwelling substantially similar to the Model House Type Victorian on exhibit by the Seller”]; Lutz v Bayberry Huntington, Inc., 148 NYS2d 762 [Sup Ct, Nassau County 1956] [model home purchased from newspaper advertisement].)
Here, as in Caceci, plaintiffs had no meaningful choice but to rely on the builder to construct a home that was fit to live in. While the premises are a complex commercial building of 29 stories and are subject to latent defects as is any other building, the legislature implicitly recognized that buyers of units in such large buildings are better able to protect themselves vis-a-vis the seller than are buyers of units in smaller premises. And so, *387 the Court of Appeals found that the statute completely replaced the common law, noting that General Business Law article 36-B “abrogates” it, entirely repealing and annulling it. (Fumarelli, 92 NY2d at 306; Bradley, 2012 NY Slip Op 30948[U], *8 [explaining that common-law warranty does not survive General Business Law article 36-B because Fumarelli Court held that statute abrogated, not derogated, common law].) The strong presumption, therefore, is that General Business Law article 36-B is a “full, effective, and realistic substitute for the protections and rationale recognized in Caceci,” because Caceci did not create a warranty significantly greater than did the legislature by statute. (Fumarelli, 92 NY2d at 302.) Therefore, there is no authority, under Caceci or the cases cited therein, for the notion that there is or ever was an implied housing warranty for large commercial real estate ventures.
Absent an implied housing warranty, there is no need to determine whether the limited warranty in the offering plan, which specifically excludes implied warranties, is permissible and bars plaintiffs implied warranty claims.
D. Breach of Contract
Claims that a builder failed to build a new building according to the specifications in the contract are separate from warranty claims. (See Plaza PH2001 LLC v Plaza Residential Owner LP, 98 AD3d 89, 101-102 [1st Dept 2012]; Tiffany at Westbury Condominium v Marelli Dev. Corp., 40 AD3d 1073, 1075-1076 [2d Dept 2007].) Consequently, claims that a builder did not follow the specifications in the contract are not precluded by a limited warranty. (Id.) Here, as plaintiff claims that 112 CPS failed to build the building that it had agreed to build under the offering plan, its first cause of action is not a claim for breach of express or implied warranty, and is not precluded by the language in the warranty.
IWC notes that the offering plan contains the following provision:
“The issuance of a permanent Certificate of Occupancy for the Building shall be deemed presumptive evidence that the Building and Apartment have been completed substantially in accordance with the Plan and the plans and specifications. However, nothing herein contained shall excuse Sponsor to correct any defects in construction in accordance with the conditions set forth in the plan in the section entitled ‘Rights and Obligations of Sponsor,’ *388 and will only be responsible to correct any construction defects to the extent, and on the terms and conditions, set forth in such section of the Plan.” (Offering plan at 129.)
The “Rights and Obligations of Sponsor” section of the offering plan provides that “Sponsor will, at its sole cost and with reasonable diligence, complete the construction of the Building substantially in accordance with the Plans and Specifications described in this Offering Plan and Exhibits thereto, and with a quality of construction comparable to currently prevailing standards.” (Offering plan at 103.) Consequently, under the contract, although the certificate of occupancy is presumptive evidence that the building is completed according to offering plan specifications, the sponsor is not relieved of its obligation to build a building in accordance with the specifications described in that plan. In Plaza, the First Department held that a similar, internally inconsistent provision in a real estate contract did not warrant dismissal of breach of contract claims under CPLR 3211 (a) (1). {Plaza, 98 AD3d at 100-101.) Accordingly, it is not appropriate to dismiss plaintiff’s breach of contract claims at this stage.
Although 112 CPS failed to plead documentary evidence as a defense, IWC did, and a third-party defendant may move to dismiss plaintiffs claim based on that defense. (CPLR 1008.)
III. IWC’s Motion to Dismiss Third-Party Complaint and Cross Claims
A. Contentions
IWC contends that 112 CPS’s third-party claims and the related cross claims by other defendants, should be dismissed because: (1) the indemnification clause in IWC’s contract does not cover plaintiffs claims and only benefits JT Magen, not 112 CPS; (2) common-law indemnity is not available because IWC has no relationship with 112 CPS; (3) common-law indemnity and contribution are not available for purely economic claims; and (4) any negligence claims are precluded by IWC’s contract with JT Magen. IWC also contends that any cross claims relating to plaintiffs fourth, fifth, and sixth causes of action should be dismissed because they are not related in any way to IWC’s work.
112 CPS and JT Magen contend that the contribution and common-law indemnification claims should not be dismissed because the complaint contains separate negligence claims, and *389 that the indemnification clause in IWC’s contract covers plaintiffs claims.
B. Contribution
Under CPLR 1401, contribution is not available for purely economic claims stemming from a breach of contract because the party only seeks the benefit of a prior bargain. (See Structure Tone, Inc. v Universal Servs. Group, Ltd., 87 AD3d 909, 911 [1st Dept 2011]; Trump Vil. Section 3 v New York State Hous. Fin. Agency, 307 AD2d 891, 897 [1st Dept 2003].) Parties defending negligence claims, however, including injury to property, may seek contribution from other, jointly-responsible parties. (See Sound Refrig. & A.C., Inc. v All City Testing & Balancing Corp., 84 AD3d 1349, 1350 [2d Dept 2011] [reinstating contribution claims as plaintiff alleged both negligence and breach of contract].) Plaintiff alleges that the defendants’ negligence caused damage to the building, including water damage, along with the separate breach of contract claims. Therefore, the contribution claims should not be dismissed.
If a plaintiff cannot sustain negligence claims, however, third-party claims for contribution would also fail. If a contract constitutes the sole source of a defendant’s duty to a plaintiff, the plaintiff cannot recast the breach of contract claims as a separate tort. (Sommer v Federal Signal Corp., 79 NY2d 540, 550-552 [1992].) However,
“a contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract. A tort may arise from the breach of a legal duty independent of the contract, but merely alleging that the breach of contract duty arose from a lack of due care will not transform a simple breach of contract into a tort.” (Id. at 551 [internal quotation marks omitted].)
A professional, for example, may be liable in tort for breaching a duty of care beyond the terms of the contract under which he or she was hired. (Id.) “In disentangling tort and contract claims, [courts must consider] the nature of the injury, the manner in which the injury occurred and the resulting harm.” (Id. at 552.) This factual determination is not appropriate in a motion to dismiss, so there are no grounds for this court to dismiss the contribution claims based on a premature finding that the plaintiff will ultimately not be able to sustain the negligence claims.
*390 C. Common-Law Indemnification
Common-law indemnification is available to a party who is found vicariously liable without any actual fault; a party who has participated in the wrongdoing is not entitled to indemnity. (See Trump, 307 AD2d at 895.) Plaintiff alleges that 112 CPS and JT Magen were themselves negligent, not that they are vicariously liable under a statutory or similar theory. Consequently, if 112 CPS or JT Magen are liable to plaintiff, it will be due to their own negligence. Thus, common-law indemnity is not available. (See Edge Mgt. Consulting, Inc. v Blank, 25 AD3d 364, 367 [1st Dept 2006] [upholding dismissal of common-law indemnity claim against third-party defendant because plaintiff alleged direct, not vicarious, liability for negligence].)
D. Contractual Indemnification
The contract between JT Magen and IWS states that
“[subcontractor [IWS] will indemnify and hold harmless J.T. Magen & Co., Inc. and owner . . . against any and all claims, suits, liens, judgments, damages, law suits and expenses including reasonable legal fees and costs arising in whole or in part and in any manner from the acts; omissions; breach or default of Subcontractor [IWS].”
JT Magen’s claims against IWS are within the language in this indemnification provision.
112 CPS is identified as the owner in its contract with JT Ma-gen, and seeks to enforce the indemnification clause, which indemnifies the owner, as a third-party beneficiary. Interpretation of intertwined contracts, such as these, and determining who is a third-party beneficiary are both factual determinations that cannot be resolved in a motion to dismiss. Consequently, JT Magen’s and 112 CPS’s claims should not be dismissed.
E. Remaining Cross Claims
IWS’s motion to dismiss cross claims based on plaintiff’s fourth through sixth causes of action is unopposed. Those cross claims are dismissed.
IV DKS’s Motion to Dismiss Third-Party Complaint
DKS contends that 112 CPS failed to state a claim for contribution because DKS only worked for a prior owner, not plaintiff. DKS further contends that 112 CPS cannot sustain a common-law indemnity claim because plaintiff does not claim 112 CPS is vicariously liable, and because DKS had no contract with 112 CPS. DKS further contends that 112 CPS’s own work is an *391 intervening and superceding cause of plaintiffs claimed damages, and that the contribution and indemnification claims are barred by the statute of limitations.
A. Common-Law Indemnification
112 CPS cannot sustain a claim for common-law indemnification against DKS because plaintiff only claims that 112 CPS is directly, not vicariously liable. (See III. C.)
B. Contribution
As plaintiff advances negligence claims against 112 CPS, it is inappropriate to dismiss 112 CPS’s contribution claims. (See III. B.) Moreover, a claim for contribution accrues when the party seeking contribution is found liable. Consequently, the statute of limitations has not elapsed. (See Bay Ridge Air Rights v State of New York, 44 NY2d 49 [1978].) In any event, a determination as to whether 112 CPS’s work constitutes a superseding, intervening cause that would absolve DKS of responsibility for plaintiffs damages is fact specific.
V Roslyn’s Motion for Summary Judgment
Roslyn contends that 112 CPS’s claims, and other cross claims for contribution and common-law indemnity are time-barred. 112 CPS disagrees.
A, Common-Law Indemnification
112 CPS, and the other third-party defendants, cannot sustain a claim for common-law indemnification against Roslyn as plaintiff alleges that 112 CPS is directly, not vicariously liable. (See III. C.)
B. Contribution
Again, as contribution claims accrue when the party seeking contribution is found liable, Roslyn’s claim that the causes of action for contribution are time-barred is without merit. (See IV B.)
VI. Conclusion
Accordingly, it is hereby ordered, that 112 CPS’s motion to dismiss is denied; it is further ordered, that IWC’s motion to dismiss is denied in part and granted in part; it is further ordered, that DKS’s motion to dismiss is denied in part and granted in part; and it is further ordered, that Roslyn’s motion for summary judgment is denied in part and granted in part.